(EMB-7337)
ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Two North Road
P.O. Box 4922
Warren, NJ 07059
(732) 805-3360  (732) 805-3346 fax
Attorneys for Plaintiff
Our File No. 1967-1001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| INTERACTIVE MEDIA ENTERTAINMENT AND GAMING ASSOCIATION, INC., a not for profit corporation of the State of New Jersey, | : <br> : <br> : | CIVIL ACTION <br><br> Case Number _____ |
| Plaintiff, | : | |
| -vs- | : | VERIFIED COMPLAINT WITH REQUEST FOR TEMPORARY RESTRAINTS. |
| ALBERTO GONZALES, Attorney General of the United States, THE FEDERAL TRADE COMMISSION and THE FEDERAL RESERVE SYSTEM, | : <br> : | |
| Defendants. | : | |
| | : | |

PLAINTIFF, INTERACTIVE MEDIA ENTERTAINMENT AND GAMING

ASSOCIATION, L.L.C., a not for profit corporation formed under the laws of the State

of New Jersey and with its office and principal place of business at 1850 K Street, N.W.,

International Square, Suite 390, Washington, DC 20006, by way of Verified Complaint

against the named Defendants, says:

## JURISDICTION

1.  This matter asserts a claim for injunctive relief based on constitutional claims and the court has jurisdiction over the matters herein pursuant to the provisions of 28 *U.S.C.* § 1331 and 31 *U.S.C.* § 5365 and other applicable Federal statutes laws, rules and regulations therein made and provided.

## VENUE

2.  This matter is properly venued in the United States District Court for the District of New Jersey insofar as, as is more fully averred below, the individual(s) and/or business entity members of the Plaintiff face prosecution in and about the District of New Jersey among other Districts and jurisdictions.

## PARTIES

3.  The Plaintiff Interactive Media Entertainment & Gaming Association, Inc., (hereinafter referred to as "iMEGA"), is a not-for-profit corporation duly formed and constituted under the laws of the State of New Jersey and which has applied for status as a not for profit corporation under § 501(c)(6) of the Internal Revenue Code.  Edward J. Leyden is iMEGA's Executive Director.

4.  iMEGA itself does not engage in electronic gaming by and through the Internet as hereinafter described, but engages in the collection and dissemination of information and advice regarding such services to its members and members of the general public in various media, including speech, print and Internet media.

5.  The members of iMEGA engage in electronic gaming by and through the Internet as hereinafter described, and some of its members are individuals and/or business entities engaged in the business of providing interactive entertainment services to

individuals through use of personal computers, both with and without a fee, for the said entertainment services.

6. Among other entertainment services, some of iMEGA members provide an Internet gambling opportunity to private individuals located both within and beyond the territorial borders of the United States of America as a form of entertainment which can be engaged in by persons within the privacy of their homes and/or other places using private personal computers.

7. iMEGA members who are engaged in the business of providing an Internet gambling opportunity to private individuals are, on information and belief, located within the territorial limits of the State of New Jersey, in all fifty (50) states of the United States and its territories as well as Tribal lands, and throughout the world.

8. Defendant, Alberto Gonzales (hereinafter referred to as the "Attorney General") is the Attorney General of the United States and head of the Justice Department of the United States. As such, on information and belief, he is the Chief Law Enforcement Officer of the United States and entrusted to prosecute the criminal laws of the United States. He is sued in his official capacity.

9. Defendant, Federal Trade Commission (hereinafter referred to as the "Commission"), is a federal regulatory body duly constituted by act of Congress and entrusted to make and enforce regulations pertaining to transfers of funds by and through financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, transactions which are processed through financial services known as payment system instruments, as well as credit cards issued by

financial companies which take place among the several states and between persons or entities in the United States of America and foreign countries.

10. Defendant, Federal Reserve Board (hereinafter referred to as the "Board"), is a federal regulatory body duly constituted by act of Congress and entrusted to make and enforce regulations pertaining to transfers of funds by and through financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, transactions which are processed through financial services known as payment system instruments, as well as credit cards issued by financial companies which take place among the several states and between persons or entities in the United States of America and foreign countries.

**FACTS COMMON TO ALL COUNTS**

11. The advent of computer technology and the connectivity of computers gave rise in the last quarter century or more to the ability to communicate and interact among individuals and business entities, among others, by use of a computer network known as the Internet. As described by United States District Court in *U.S. v. Extreme Associates, Inc.*, 352 *F.Supp. 2d* 578, 580-581 (W.D. Pa. 2005):

a. The Internet is a decentralized, global medium of communication that links people, institutions, corporations, and governments around the world. It is a giant computer network that interconnects innumerable smaller groups of linked computer networks and individual computers. Although precise estimates are difficult to formulate due to its constant and rapid growth, the Internet is currently believed to connect more than 159 countries and close to 322 million users worldwide.

b. Because the Internet merely links together numerous individual computers and computer networks, no single entity or group of entities controls all of the material made available on the Internet or otherwise limits the ability of others to access such materials. The range of digital information available to Internet users-which includes text, images, sound and video-is individually created, maintained, controlled, and located on millions of separate individual computers around the world. Each content provider of a web site is responsible for its content.

c. The Internet presents extremely low entry barriers to anyone who wishes to provide or distribute information or gain access to it. The Internet provides an affordable means for communicating with, accessing, and posting content to a worldwide audience.

d. In the United States, individuals have several easy means of gaining access to computer communications systems in general and to the Internet in particular. Many educational institutions, businesses, local communities, and libraries maintain an easily accessible computer network which is linked directly to the Internet. Many of these entities restrict access to sexually explicit material.

e. Internet service providers ("ISPs") allow subscribers to access the Internet through the subscriber's personal computer by using a telephone modem, broadband, including a cable modem or digital subscriber line (DSL), and dedicated access, such as a T1 line. Most ISPs charge a monthly fee in the range of $15.00 to $50.00, but some provide their users with free or very low-cost Internet access. Every ISP has a Terms of Service Agreement with those customers that desire to host content, in the form of a web site, on the ISP's network. The Terms of Service Agreement may prohibit the individual

or entity (customer) hosting a web site from posting certain material such as child pornography or sexually explicit content, on the ISP's network.

f. Subscribers who do not host a web site, but utilize the ISP to access the Internet, also enter into a Terms of Service Agreement which may limit certain activities.

g. The World Wide Web is the most popular technology to access information on the Internet. Anyone with access to the Internet and proper software can create webpages or home pages which may contain many different types of digital information-text, images, sound, and video. The web comprises millions of separate websites that display content provided by particular persons or organizations. Any Internet user anywhere in the world with the proper software can view web pages posted by others, read text, view images and video, and listen to sounds posted at these web sites. Internet users wishing to make content available to others must create the content and publish it on the Internet through an ISP.

h. The web serves in part as a global, online repository of knowledge, containing information from a diverse array of sources, which is easily accessible to Internet users around the world. Though information on the web is contained on individual computers, each of these computers is connected to the Internet through a web protocol, the hyper text transport protocol, that allows the information on the web to be accessible to web users. The content of some web sites is available to all users while other content may not be accessible without a method of access, such as a login code, chosen by the web site host.

i. To gain access to the information available on the web, a person generally uses a web "browser"-software such as Netscape Navigator or Internet Explorer-to

display, print, and download documents that are formatted in the standard web formatting language. Each page on a web site has an address that allows users to find and retrieve it.

j.    Most web documents also contain "links." These are short sections of text or images that refer and link to another document. Typically the linked text is blue or underlined when displayed; and when selected by the user on the user's computer screen, the referenced document is automatically displayed, wherever in the world it actually is stored. Links, for example, are used to lead from overview documents to more detailed documents on the same website, from tables of contents to particular pages, and from text to cross-references, footnotes, and other forms of information.

k.    Links may also take the user from the original website to another website on a different computer connected to the Internet, a computer that may be located in a different area of the country, or even the world.

12. Among other interactions, the advent of such technology gave rise to the ability of individuals and/or business entities to permit participation in games of chance and/or skill via the Internet as a form of entertainment with betting and wagering.

13. Among other entertainment activities offered to the general public within and without the United States, iMEGA and some of its members utilize computer technology, including the use of computer servers and the Internet, to provide entertainment and wagering via the Internet.

14. iMEGA members maintain such computer technology and computer servers at locations located within and outside the United States.

15. In all said locations of iMEGA members' computer servers, wagering on games of chance and/or skill via the Internet is a legal activity permitted by law therein.

7

16. In all said locations of iMEGA members' computer servers, accepting sums of money by wire transfer, credit and/or debit card transaction, and/or by mail or telephone transfer, is a legal activity permitted by law therein.

17. Immediately prior to October 2006, some of iMEGA's members engaged in the business of maintaining activities known as "Internet Casinos," the same being a computer image generated and supported by computer technology and accessible to anyone wishing to engage in games of chance and/or skill and/or skill, including but not limited to wagering on said games of chance and/or skill and/or skill.

18. An Internet Casino operated by an iMEGA member functions generally, but not limited to the following:

a. A gambler directs the browser, or search device, of his computer to an Online casino website.

b. The gambler is advised that he will receive a gambling credit or "chip" for each dollar that he deposits and is instructed to enter his billing information.

c. The gambler can use a credit card, a debit card drawing funds on his account, telephone, wire transfer, money order and/or personal check or other transaction to purchase a gambling credit.

d. The gambler can then place wagers with any of the games located on the site, which are computer generated and administered.

e. Any winnings are separately transferred to the gambler's account and any losses are debited against the account.

f.  In the case of credit cards, the issuing institution debits losses against the account of the cardholder. *Drawn from In Re Mastercard Litigation,* 313 *F.3d* 257 (Fifth Cir.2002).

19. Persons wishing to engage in games of chance and/or skill and betting or wagering on them through iMEGA members' Internet Casinos may originate such an activity while located anywhere in the world, including but not limited to any jurisdiction of the United States, where gambling in general and Internet gambling specifically may be legal, illegal and/or otherwise regulated, of which the public and/or iMEGA members may or may not know.

20. Persons wishing to engage in games of chance and/or skill and betting or wagering on them through some of iMEGA members' Casinos prior to October 2006 were able to do so by transmitting funds belonging to them by wire transfer, debit card and/or credit card transaction, and/or by mail and/or by other means to the said Internet Casinos of iMEGA members.

21. Such transactions of necessity involve transfer of funds of the persons wishing to engage in entertainment by means of games of chance and/or skill and wagering on them by and through financial institutions including, but not limited to, banks, clearing houses and the Federal Reserve System itself.

22. In addition to such transfers of funds by and through financial institutions such as banks, clearing houses and other financial institutions licensed and/or regulated by the Federal Reserve System, transactions are also processed through other third party financial and/or finance-related organizations with transactions known as payment system instruments, as well as credit cards issued by financial companies, all of which

may be utilized by persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos.

23. On information and belief the actual transfers of funds by said financial institutions including, but not limited to, banks, clearing houses and other financial institutions licensed and/or regulated by the Federal Reserve System, other third party financial and/or finance-related organizations, or credit card issuing companies, does not involve the wagering or betting of any thing of value and does not involve, implicate or rely in any way upon any luck in order to accomplish the transaction which is requested by the bettor and accepted by the Internet Casino.

24. On information and belief, no such said financial institutions including, but not limited to, banks, clearing houses and other financial institutions licensed and/or regulated by the Federal Reserve System, other third party financial and/or finance-related organizations, or credit card issuing companies, offer any form of betting or wagering for money, but only engage in the business of transfer of funds.

25. On information and belief, said financial institutions including, but not limited to, banks, clearing houses and other financial institutions licensed and/or regulated by the Federal Reserve System, other third party financial and/or finance-related organizations, or credit card issuing companies, may assess a small and set fee for the use of their services which is not tied to or dependent upon the placing, winning or losing of a bet or wager in any way.

26. On or about October 6, 2006 Congress enacted a statute entitled "The Unlawful Internet Gambling Enforcement Act of 2006," codified as 31 *U.S.C.* § 5361, *et*

*seq.* (hereinafter referred to as the "Act"). A true copy of the Act is annexed as **Exhibit 1** and is incorporated as if more fully set forth at length herein.

27. The Act creates an offense entitled "unlawful Internet gambling," which the Act defines as to "place, receive, or otherwise knowingly transmit a bet or wager by any means which involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet or wager is initiated, received or otherwise made," according to 31 *U.S.C.* § 5362(10)(A).

28. The Act imposes criminal liability on any person or entity which violates 31 *U.S.C.* § 5363, including a term of imprisonment of up to five (5) years.

29. The Act punishes as a criminal act the knowing acceptance of any credit or electronic fund transfer by any person or entity such as some of iMEGA's members or financial institutions aforesaid, in connection with the participation of another person in unlawful Internet gambling under 31 *U.S.C.* §5363(1-4).

30. The Act further permits the Defendant Attorney General and/or any duly empowered official of the Defendant Commission or Defendant Board, in addition to criminal penalties, to seek civil remedies including, but not limited to, injunctions which would restrain restricted transactions under the acts regardless whether a criminal prosecution has been initiated, pursuant to 31 *U.S.C.* § 5365(b)(1) or by an Attorney General or other appropriate official of the several states pursuant to 31 *U.S.C.* § 5365(b)(2).

31. The Act, 31 *U.S.C.* § 5364(a), further requires the Defendants Board and Commission, acting together with or apart from the Defendant Attorney General, to adopt

regulations within two hundred and seventy (270) days of the effective date of the Act
requiring the said financial institutions such as banks, clearing houses and other financial
institutions licensed by the Federal Reserve System, financial services issuing
instruments known as payment system instruments, as well as financial companies which
have issued credit cards to persons wishing to engage in games of chance and/or skill and
wagering on them with the said Internet Casinos, to implement systems to identify and
block, prevent or otherwise prohibit transactions which are restricted by the Act.

32. Under the provisions of the Act as aforesaid, some of the members of iMEGA
face imminent and immediate criminal arrest and prosecution for engaging in the
business of operating Internet Casinos which permit betting or wagering as aforesaid.

33. Under the provisions of the Act as aforesaid, some of the members of iMEGA
face imminent financial ruin, closure, forfeiture and termination of their employees if the
provisions of the Act are implemented.

34. On information and belief, other persons and/or business entities situated
identically to or substantially similar to some of the members of Plaintiff iMEGA have
been prosecuted by Defendant Attorney General and those United States Attorneys acting
pursuant to their authority as agents thereof, under other laws, specifically the Wire Act,
18 *U.S.C.* § 1084, *et seq.,* for the conducting of Internet Casinos which permit betting or
wagering as aforesaid, have been subjected to arrest, house detention, prosecution,
forfeiture and other criminal proceedings and/or sanctions. In particular there are
prosecutions pending in the Eastern District of Missouri, the District of Utah and the
Southern District of New York.

12

35. On information and belief, other persons and/or business entities situated identically to the members of Plaintiff iMEGA have been prosecuted by Defendant Attorney General and those United States Attorneys acting pursuant to their authority as agents thereof, under other laws because of their conducting of Internet Casinos which permit betting or wagering as aforesaid, have been subjected to arrest, house detention, prosecution, forfeiture and other criminal proceedings and/or sanctions.

36. On further information and belief, said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet or Online Casinos have discontinued the acceptance of funds transferred, deposited or secured by persons wishing to bet or wager with iMEGA members' Internet Casinos because of the imminent threat of criminal prosecution, forfeiture and other penalties under the Act as aforesaid, to the severe and continuing financial detriment of IMEGA members.

## COUNT ONE

### Interference with Constitutionally Protected Expressive Association

37. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties allegations and Allegations Common to All Counts of the Complaint and realleges them and incorporates them as if more fully set forth at length herein.

38. iMEGA members engage in the aforesaid conduct under the laws of various foreign flags and in states of the United States of America where such activities are legal and in conformance with rules and regulations thereof.

39. As part of this activity iMEGA members engage in activities, such as lobbying, marketing and publication, which are calculated to advocate for public and private rights of its members and those private individuals who use iMEGA members' Internet Casinos to engage in legal Internet Casino gambling.

40. As part of this activity and the business activities of iMEGA members in general, iMEGA members engage in such activities to educate those persons in responsible, careful and financially safe entertainment, betting and wagering through legal Internet gambling.

41. iMEGA members, through the facilities of the Internet, reach an audience for the supplying of entertainment through wagering and betting which encompasses every of the said several states of the United States and every foreign country.

42. Some, but not all, of the said several states of the United States make gambling illegal.

43. Some, but not all, of the said several states of the United States permit gambling.

44. Some, but not all, of the said several states of the United States permit Internet and/or Online Casinos Gambling.

45. Some, but not all, of the said several states of the United States permit the transfer of funds for the purpose of betting or wagering by and through financial institutions such as banks, clearing houses and other financial institutions licensed by the

Federal Reserve System, transactions through financial services known as payment system instruments, as well as credit cards issued by financial companies.

46. Some, but not all, countries permit the operation of Internet or Online Casinos and/or the transfer of funds for the purpose of betting or wagering by and through financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, transactions through financial services known as payment system instruments, as well as credit cards issued by financial companies.

47. Thus, iMEGA members engage in expressive association for the said purposes to the use and benefit of its members and members of the general public as aforesaid, and engage in legal activities then and there in jurisdictions which permit the same.

48. The provisions of the Act as aforesaid unduly, unnecessarily, unequally and improperly interfere with the expressive association of IMEGA and its members in that:

a. The Act impermissibly chills such expressive association in that iMEGA members are branded as criminals and subjected to criminal prosecution, loss of freedom and seizure and/or forfeiture of property for engaging in association espousing safe, legal and responsible wagering; and,

b. The Act, and by implication from known pending prosecutions under the Wire Act, punishes such conduct which is otherwise legal in such states and/or countries where such entertainment by betting or wagering is legal.

c. The Act, and by implication from known pending prosecutions under the Wire Act, impermissibly chills the rights of iMEGA members by criminalizing content-neutral conduct which is not a gambling activity; to wit: the actual transfers of funds by financial institutions such as banks, clearing houses and other financial institutions licensed by the

Federal Reserve System, transactions through financial services known as payment system instruments, as well as credit cards issued by financial companies, which does not involve the wagering or betting of any thing of value and does not involve, implicate or rely in any way upon any luck in order to accomplish the transaction which is requested by the bettor and accepted by the Internet Casino, and which has been held by a court of competent jurisdiction not to constitute making, taking, buying, selling, redeeming or collecting bets.

d. The Defendants, and/or each or all of them by and through their agents, servants or employees have engaged in conduct calculated to discourage, end, criminalize and prevent iMEGA members' otherwise lawful activity by issuing subpoenas under various laws to financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services known as payment system instruments, as well as financial companies issuing credit cards, all of which may, but not necessarily do, engage in the transfer of funds for Internet gambling for entertainment purposes of wagering and betting which are otherwise legal activities.

e. The Defendants, and/or each or all of them by and through their agents, servants or employees, have detained, arrested, indicted, prosecuted, incarcerated, and sought to imprison officers of other similarly situated companies engaged in the same conduct as iMEGA members, which matters are still proceeding in other jurisdictions.

49. The Act fails to give adequate notice of the actions which may constitute criminal acts for said actions or omissions to act by persons situated in the same status across the various states of the United States and foreign countries.

16

50. The Act fails to provide adequate notice of the actions which may result in civil forfeitures for said actions or omissions to act by persons situated in the same status across the various states of the United States and foreign countries.

51. The said effects of the Act, and by implication from known prosecutions under the Wire Act, the enforcement of the Act and/or regulations adopted thereunder, do, and will in the immediate future unless relief is granted by this court, violate the constitutional rights of iMEGA and its members, as well as the members of the public as aforesaid.

52. The Act, on its face, is unconstitutional thereby.

53. The Act, as applied to these facts, is unconstitutional thereby.

54. Plaintiff iMEGA members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them

17

with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

   c.  Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

   d.  For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

## COUNT TWO

### Interference with Constitutional Rights of Privacy

55. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties allegations, Allegations Common to All Counts of the Complaint and Count One and realleges them and incorporates them as if more fully set forth at length herein.

56. The bettors who seek entertainment by and through iMEGA members' Internet Casinos engage in such conduct by computer through the Internet, and overwhelmingly from the privacy of their personal computers.

57. The act of gambling as defined by the Act consists of placing, receiving or otherwise knowingly transmitting a bet or wager by any means which involves, at least in part, of the Internet.

58. Under the Act, 31 *U.S.C.* § 5362(10)(A), unlawful Internet gambling means to place, receive, or otherwise knowingly transmit a bet or wager by any means which

18

involves the use, at least in part, of the Internet where such bet or wager is unlawful under any applicable Federal or State law in the State or Tribal lands in which the bet is initiated, received or otherwise made.

59. Under the Act, 31 *U.S.C.* § 5362(10)(E), the intermediate routing of electronic data does not determine the location or locations in which a bet or wager is initiated, received, or otherwise made, but the Act punishes as a criminal act any content-neutral transmittal of the funds used for a bet or wager if the originating point or end point makes Internet gambling illegal.

60. The Act has an inconsistent effect on iMEGA members and persons similarly situated and wishing to take advantage of iMEGA members' services based solely on their status as residents of different jurisdictions as aforesaid.

61. The Act creates criminal liability on the part of iMEGA members and persons similarly situated and wishing to take advantage of iMEGA members' services based solely on their status as residents of different jurisdictions as aforesaid.

62. The Act impermissibly interferes with the personal privacy and consensual activities of those members of the public who wish to avail themselves of iMEGA members' services.

63. The Act fails to give adequate notice of the actions which may constitute criminal acts for said actions or omissions to act by persons situated in the same status across the various states of the United States and foreign countries, or who may travel about and wish to take advantage of iMEGA's members' services while engaged in interstate and/or international travel.

64. The Act fails to provide adequate notice of the actions which may result in civil forfeitures for said actions or omissions to act by persons situated in the same status across the various states of the United States and foreign countries.

65. Plaintiff and its members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

c. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

d. For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

## COUNT THREE

### Interference with iMEGA members' Protected Commercial Speech.

66. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties allegations, Allegations Common to All Counts of the Complaint and Counts One and Two and realleges them and incorporates them as if more fully set forth at length herein.

67. iMEGA members advertise their activities in various media, including but not limited to magazines, periodicals, and on the Internet.

68. Advertising is a necessary incident to such commercial operations.

69. iMEGA members correctly and accurately represent that they operate legally in the country or place wherein they are incorporated and where their servers are located.

70. The Act criminalizes the financing of betting or wagering by financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services known as payment system instruments, as well as financial companies issuing credit cards, all of which may engage in the transfer of funds for Internet gambling for entertainment purposes of wagering and betting which may otherwise be lawful activities in the place where the betting or wagering takes place.

71. The Act further criminalizes as false the representation by iMEGA members that they operate legally in the country wherein they are incorporated and where their servers are located.

21

72. Support for the Act's restrictions, and for prosecution of those situated in the same circumstances as iMEGA members under other laws including but not limited to the Wire Act as aforesaid, is purported to be justified by the stated need to regulate problem or addictive gambling, gambling by minors, and financial ruin from failing to control excessive or compulsive wagering.

73. The Act's interest in regulating Internet gambling is not expressed in any clear or consistent policy and is inconsistent, arbitrary and capricious because:

a.  The Act exempts from its regulation and effect any intrastate gambling even though that gambling may be conducted in identical ways and using identical means, including the use of the Internet; and,

b.  The Act's interest in regulating Internet gambling is not expressed in any clear or consistent policy by excepting from its regulation and effect gambling on Tribal lands; and,

c.  The Act's interest in regulating Internet gambling is not expressed in any clear or consistent policy by excepting from its regulation and effect pari-mutuel and other horseracing wagers; and,

d.  The Act's interest in regulating Internet gambling is not expressed in any clear or consistent policy by permitting under its regulation and effect any interstate lotteries even though that form of gambling may be conducted in identical ways and using identical means; and,

e.  The Act's interest in regulating Internet gambling is not expressed in any clear or consistent policy by exempting from its regulation and effect any fantasy sports league.

22

74. The Act's impermissible chilling of iMEGA members' rights to engage in and offer to the public lawful wagering and betting for entertainment purposes as aforesaid does not directly and materially advance any asserted governmental interest in regulating Internet gambling.

75. The Act's impermissible chilling of iMEGA members' rights is overbroad, and more excessive than is needed to serve any governmental interests.

76. There exists less intrusive, easily emplaced and in fact existing methods of preventing any harms as advanced by any governmental interest because of computer filtering which is already in place in common usage of software on all personal computers and internet services; use of computerized virtual borders and mapping; credit card activity monitoring and limits; and financial services issuing instruments known as payment system instruments, which have limits which can be automatically self-imposed based upon the contractual arrangements and amounts deposited by individuals seeking entertainment by betting or wagering with Internet Casinos.

77. The Act's restrictions unconstitutionally interfere with, limit and restrict iMEGA members' constitutional rights thereby.

78. Plaintiff iMEGA and its members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b.  Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

c.  Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

d.  For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

### COUNT FOUR

### The Act as Ultra Vires

79. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties allegations, Allegations Common to All Counts of the Complaint and Counts One through Three and realleges them and incorporates them as if more fully set forth at length herein.

80. At a time prior to 1995, the United States, by and through the President of the United States and with the advice and consent of the United States Congress, ratified and agreed to abide by the Paraguay Accords of the Treaty creating the World Trade Organization (hereinafter referred to as the "WTO").

81. The WTO contains dispute resolution procedures to resolve controversies between signatories as to its terms.

82. Commencing in or about 2003, the sovereign nation of Antigua and Barbuda, which is also a signatory to the WTO, initiated grievance procedures against the United States because of the United States government's increasing interference and/or prosecution of its nationals and resident corporations who are or who have engaged in the business of operating Internet Casinos which are legal and permitted by sovereign laws of the said sovereign nation, by and through the Defendant Attorney General and others.

83. In August 2006, the WTO dispute process resulted in a finding that the United States had violated the terms of the WTO with regard to the grievance of Antigua and Barbuda by its increasing hindrance, interference and/or prosecution of its nationals and resident corporations who or which engaged in the business of operating Internet and/or Online Casinos which are legal and permitted by sovereign laws of the said sovereign nation.

84. In May 2007 the WTO ruled that the United States was not in compliance with the ruling of the WTO in the dispute as aforesaid, thereby permitting Antigua and Barbuda to impose sanctions.

85. The Congress of the United States, in enacting the Act, and the United States, in agreeing to be bound by the Act, and the various Defendants, or each or all of them, by

25

enforcing, investigating, proposing and/or enacting regulations, rules or procedures pursuant thereto, were, and remain so, acting *ultra vires* by enacting and/or implementing the Act after the WTO had ruled the actions of the United States violated a treaty to which the United States is a signatory.

86. On information and belief, the United States, by and through its duly appointed and constituted representatives in the matter, has chosen not to contest the said WTO determinations, but instead purports that it will seek to redefine the extent of the United States' adoption of the WTO as to Internet gambling.

87. The adoption of the Act is illegal, contrary to treaty law by which the United States purports to be bound by, and otherwise *ultra vires* to the law therein made and provided.

88. Plaintiff iMEGA and its members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit

26

cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

      c.  Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

      d.  For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

### COUNT FIVE

#### Violation of World Trade Organization Order

89. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Counts One through Four and realleges them and incorporates them as if more fully set forth at length herein.

90. The WTO has directed the United States to cease and desist in its illegal, restrictive trade practices as aforesaid.

91. The illegal and restrictive trade practices of the United States, including the adoption of the Act, directly and materially affect some of the members of iMEGA by causing them to face, and they will in the immediate future face imminent danger of an injury-in-fact, to wit: criminal arrest and prosecution, forfeiture of property, and loss of

business revenues under the Act and/or the Wire Act or other federal laws, statutes, rules and/or regulations which may be applied to the facts at hand.

92. The said effect of the United States' continuing violation has a direct and material effect on the activities of iMEGA members and members of the public within this jurisdiction and venue as aforesaid.

93. The Plaintiff iMEGA and its members have been damaged thereby, and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet or Online Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

c. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or

regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

d. For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

## COUNT SIX

### Ex Post Facto

94. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Counts One through Five and realleges them and incorporates them as if more fully set forth at length herein.

95. The business activities, actions and omissions to act of the Plaintiff iMEGA, its members and members of the general public were and are averred to be legal when conducted then and there prior to adoption of the Act.

96. Prior to the enactment of the Act the courts had previously declared that the content neutral transfer of funds for betting or wagering by financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services known as payment system instruments, as well as financial companies issuing credit cards, all of which may engage in the transfer of funds for Internet and/or Online gambling for entertainment purposes of wagering and betting which may otherwise be lawful activities in the place where the betting or wagering takes place, was and is not an illegal act under then existing laws of the United States and the several states which permit, prevent, restrict, control or regulate gambling under the Tenth Amendment. *In Re Mastercard Litigation,* 313 *F.3d* 257 (Fifth Cir. 2002).

97. Enactment of the Act, including the adoption of rules and regulations pursuant to the authority set forth in the Act, directly and materially affects some of the members of iMEGA by causing them to face and they will in the immediate future face imminent danger of an injury-in-fact, to wit: criminal arrest and prosecution, forfeiture of property, and loss of business revenues under the Act and/or the Wire Act or other federal laws, statutes, regulations and/or rules which may be applied to the facts at hand, despite the aforesaid judicial declaration.

98. On information and belief the Defendant Attorney General has already instituted criminal prosecutions and forfeiture actions against persons similarly situated to iMEGA members for acts which precede the enactment of the Act, even after the courts have ruled as aforesaid.

99. Enactment of the Act constitutes an *ex post facto* criminalization of iMEGA members' activities as well as those activities of the members of the public as aforesaid.

100.    iMEGA and its members have been damaged thereby, and will in the future be damaged thereby.

WHEREFORE, Plaintiff demands judgment:

a.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions

licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

      c. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

      d. For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

### COUNT SEVEN

### Violation of the Tenth Amendment to the United States Constitution

      101.   Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Six and realleges them and incorporates them as if more fully set forth at length herein.

      102.   The United States Constitution specifically reserves to the individual states any and all rights not delegated to the United States or prohibited thereby to the states.

      103.   Gambling is a right specifically reserved to the individual states.

104. The regulation of financial transfers, content neutral or not, for the purpose of betting or wagering is an inherent part thereof, and is therefore reserved thereby to the states.

105. The Act violates the Tenth Amendment by unconstitutionally arrogating to the United States such express and implied reserved powers to the individual states to regulate gambling and the financial transfers, content neutral or not, associated therewith for the purpose of betting or wagering.

106. iMEGA and its members have been damaged thereby, and will in the future be damaged thereby.

WHEREFORE, Plaintiff iMEGA demands judgment:

a. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

c. Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

d. For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

## COUNT EIGHT

### Request for Issuance of A Temporary Restraining Order

107. Plaintiff iMEGA restates the Allegations of Paragraphs 1-36 of the Jurisdiction, Venue and Parties Allegations, Allegations Common to All Counts of the Complaint and Allegations of Counts One through Seven and realleges them and incorporates them as if more fully set forth at length herein.

108. Some of the members of iMEGA have faced and will in the immediate future face imminent danger of an injury-in-fact, to wit: criminal arrest and prosecution, forfeiture of property, and loss of business revenues under the Act and/or the Wire Act or other laws which may be applied to the facts at hand.

109. The said imminent and immediate threat of injury-in-fact is causally connected and traceable to the adoption of the Act and the imminent enforcement of the same by the Defendants, or each or all of them, jointly, severally or in the alternative.

110. iMEGA avers that the sole method to address the imminent risk of harm is to restrain the Defendants, or each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, or any other proceeding relating to the subject matter of the Act and permitting iMEGA and some of its members to commence

business under such terms and conditions as the court may deem appropriate under the circumstances of this case.

111.   iMEGA reasonably believes that there is a likelihood it will prevail on the merits of this matter, as set forth in the aforesaid Counts of this Verified Complaint.

112.   iMEGA and its members have been damaged thereby and will in the future be damaged thereby.

WHEREFORE, Plaintiff iMEGA demands judgment:

a.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the Act, or any provision thereof, until further Order of the court; and,

b.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from introducing or adopting regulations pursuant to 31 *U.S.C.* § 5364(a) within two hundred and seventy (270) days of the effective date of the Act requiring the said financial institutions such as banks, clearing houses and other financial institutions licensed by the Federal Reserve System, financial services issuing instruments known as payment system instruments, as well as financial companies which have issued credit cards to persons wishing to engage in games of chance and/or skill and wagering on them with the said Internet Casinos, to implement systems to identify and block, prevent or otherwise prohibit transactions which are restricted by the Act until further Order of the court; and,

c.   Restraining the Defendants, and each or all of them, jointly, severally or in the alternative, from enforcing the provisions of any other Act, statute, law, rule and/or

regulation of the United States but not limited to the Wire Act, 18 *U.S.C.* § 1084, or any provision thereof, until further Order of the court; and,

      d.  For all other equitable relief as the court may necessary, just and/or and appropriate under the circumstances of this case.

## CERTIFICATION PURSUANT TO L.Civ.R. 11.2 AS TO OTHER PENDING ACTIONS

      I hereby certify that to the best of my knowledge and information there are no other actions pending in any court or jurisdiction which relate to the matter in controversy in this case, nor are there any pending arbitrations or administrative proceedings. I hereby certify however that there are pending prosecutions under the Wire Act, 18 *U.S.C.* § 1084, and other provisions of federal law in the Eastern District of Missouri under Indictment No. 4:06-CR-337-CEJ (MLM) in the matter of *United States v. Carruthers, et al.;* that an indictment has been returned under the Wire Act, 18 *U.S.C.* § 1084, and other federal laws, in the District of Utah in the matter of *United States v. CurrenC Worldwide, et al.,* for which no indictment number is currently available; and that criminal complaints have been unsealed in the Southern District of New York in the matters of *United States v. Lawrence* and *United States v. LeFebvre,* for which no charging authority, docket number or indictment number is currently available.

## NOTICE OF CLAIM OF UNCONSTITUTIONALITY
## PURSUANT TO L.R.Civ.P 24.1

Please take notice pursuant to L.R.Civ.P 24.1 and 28 *U.S.C.* § 2403(a) that the

Plaintiff herein questions the constitutionality of an act of Congress, to wit: the Unlawful

Internet Gaming Enforcement Act, 31 *U.S.C.* §5361, *et seq.,* for the reasons set forth

herein; the United States and/or the Attorney General of the United States and the

appropriate United States agency or agencies are named herein.

> (EMB-7337)
> ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
> Two North Road
> P.O. Box 4922
> Warren, NJ 07059
> (732) 805-3360  (732) 805-3346 fax
> Attorneys for Plaintiff

By:  _____
Eric M. Bernstein, Esquire
For the Law Firm

## CERTIFICATION OF
## VERIFICATION AND NON-COLLUSION

EDWARD J. LEYDEN, ESQUIRE, of full age, hereby deposes and says:

1. I am over eighteen (18) years of age, and I am under no restraints or undue influence in this matter. I have full knowledge of the matters asserted therein.

2. The allegations of the Complaint are true to the best of my knowledge, information and belief, are made for the purposes stated herein and for no other purpose, and are not made for the purpose of collusion.

Dated: June 4, 2007

State of Maryland      :
                       : ss.
Prince George's County:

Sworn and Subscribed to before me this

_____ day of _____, 2007.

_____
Notary Public

STACY L. HARDY
NOTARY PUBLIC STATE OF MARYLAND
My Commission Expires November 8, 2008

(EMB-7337)
ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
Two North Road
P.O. Box 4922
Warren, NJ 07059
(732) 805-3360  (732) 805-3346 fax
Attorneys for Plaintiff
Our File No. 1967-1001

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

| | | |
|---|---|---|
| INTERACTIVE MEDIA ENTERTAINMENT AND GAMING ASSOCIATION, INC., a not for profit corporation of the State of New Jersey, | : : : | CIVIL ACTION <br><br> Case Number _____ |
| *Plaintiff,* | : | |
| -vs- | : | VERIFICATION OF FACSIMILE SIGNATURE OF VERIFIED COMPLAINT WITH REQUEST FOR TEMPORARY RESTRAINTS. |
| ALBERTO GONZALES, Attorney General of the United States, THE FEDERAL TRADE COMMISSION and THE FEDERAL RESERVE SYSTEM, | : : : | |
| *Defendants.* | : | |
| | : | |

PHILIP G. GEORGE, of full age, hereby deposes and says:

1. I am an attorney at law of the State of New Jersey, and I am an Associate in the Law Firm which represents the Plaintiff in the above entitled matter. I am assigned to the handling of this matter and I have personal knowledge of the facts set forth herein.

2. I certify that the Verified Complaint was sent by email to Edward J. Leyden and thereafter he telephoned this office and verified the form and content of the Verified Complaint, and thereafter sent by facsimile the Verification Page thereof to this office.

3. I certify that the signature of Edward J. Leyden to the Verification submitted

with the Verified Complaint filed on behalf of Plaintiff, is the genuine signature of Mr.

Leyden.  The Verification page with the original signature of Edward J. Leyden affixed

thereto will be filed with the court when received in this office.

    4.  I hereby certify that the foregoing statements made by me are true.  I am

aware that if any of the foregoing statements made by me are willfully false, I may be

subject to punishment.

Philip G. George, Esquire
ERIC M. BERNSTEIN & ASSOCIATES, L.L.C.
(PGG-8129)
Two North Road
P.O. Box 4922
Warren, New Jersey 07059
Attorneys for Plaintiff

Dated:  June 5, 2007