CHRISTOPHER J. CHRISTIE
United States Attorney

PETER D. KEISLER
Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director

JACQUELINE COLEMAN SNEAD
Trial Attorney
U.S. Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, N.W., Room 7214
Washington, DC 20530
(202) 514-3418

**Attorneys for Defendants**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
TRENTON DIVISION**

| | |
|---|---|
| **INTERACTIVE MEDIA ENTERTAINMENT AND GAMING ASSOCIATION, L.L.C., a limited liability corporation of the State of New Jersey** | ) ) ) ) ) |
| **Plaintiff,** | ) Hon. MARY L. COOPER ) ) Civil Action No. 07-2625 (MLC)(TJB) ) |
| **v.** | ) **DEFENDANTS' OPPOSITION TO** ) **PLAINTIFF'S MOTION FOR** ) **TEMPORARY RESTRAINING ORDER AND** |
| **ALBERTO GONZALES, Attorney General of the United States, THE FEDERAL TRADE COMMISSION, and THE FEDERAL RESERVE SYSTEM** | ) **MEMORANDUM IN SUPPORT OF** ) **DEFENDANTS' CROSS-MOTION TO** ) **DISMISS** ) **RETURN DATE: SEPTEMBER 4, 2007** ) ) |
| **Defendants.** | ) ) ) |

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION ..................................................................................................... 1

STATUTORY BACKGROUND ................................................................................ 4

PROCEDURAL BACKGROUND ............................................................................ 7

ARGUMENT ............................................................................................................. 8

    I.      PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE
           MERITS OF ITS CLAIMS. ................................................................. 9

           A.    Plaintiff's Claims Should be Dismissed for Lack of Standing. ............. 10

                    1.    Plaintiff lacks standing to challenge the UIGEA under
                            the First Amendment. ................................................... 12

                            a.    Plaintiff's claim that the UIGEA has a chilling
                                effect on members is insufficient to confer
                                standing. ....................................................... 12

                            b.    Plaintiff has not alleged a credible threat of
                                prosecution under the UIGEA sufficient to confer
                                standing. ....................................................... 14

                            c.    Plaintiff's claim of its members' imminent financial
                                ruin are insufficient to confer standing. ........................... 15

                    2.    Plaintiff lacks standing to challenge the UIGEA's alleged
                              violation of a WTO order. ............................................ 16

                      3.    Plaintiff lacks standing to challenge the UIGEA as an ex post
                              facto law. ................................................................ 17

                      4.    Plaintiff lacks standing to challenge the UIGEA under the
                              Tenth Amendment. ..................................................... 17

           B.    Plaintiff's Claims Should Be Dismissed as Unripe. ................................ 19

C.    Plaintiff's Claims Should Be Dismissed for Failure to State a Claim. ................................................................................ 21

  1.    Plaintiff Has not Stated a Claim of a First Amendment Violation. .................................................................. 22

      a.    The UIGEA is not an unconstitutional interference with Plaintiff's right of association ................................. 24

      b.    The UIGEA does not violate Plaintiff's right of privacy. ......................................................................... 26

      c.    The UIGEA does not regulate commercial speech. ......... 27

  2.    Plaintiff's Allegation of an Inconsistency Between the UIGEA and a WTO Ruling Fails to State a Claim. .................... 29

  3.    The UIGEA Is a Constitutional Exercise of Congress' Authority Under the Commerce Clause and Therefore Does Not Violate the Tenth Amendment. .................................... 30

  4.    The UIGEA Does Not Apply Retroactively and Therefore Does Not Violate the Ex Post Facto Law. .................................. 31

II.    PLAINTIFF HAS NOT ESTABLISHED THAT IT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION. .............. 32

III.    THE BALANCE OF HARMS AND PUBLIC INTEREST DO NOT SUPPORT AN INJUNCTION. ......................................................... 34

CONCLUSION ................................................................................. 35

## TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(s)**

*ACLU v. Ashcroft,*
    322 F.3d 240 (3d Cir. 2003) ........................................ 14

*Acierno v. New Castle County,*
    40 F.3d 645 (3d Cir. 1994) ...................................... 32, 34

*Adams v. Freedom Forge,*
    204 F.3d 475 (3d Cir. 2000) .................................... 32, 33

*Aiello v. City of Wilmington, Delaware,*
    623 F.2d 845 (3d Cir. 1980) ........................................ 13

*Allen v. Wright,*
    468 U.S. 737 (1984) .................................................. 10

*American Future Sys., Inc. v. Pennsylvania State Univ.,*
    688 F.2d 907 (3d Cir. 1982) ........................................ 26

*American Littoral Soc'y v. United States Envt'l Protection Agency Region,*
    199 F. Supp. 2d 217 (D.N.J. 2002) ............................... 11

*Anderson v. Davila,*
    125 F.3d 148 (3d Cir. 1997) ........................................ 33

*Arcara v. Cloud Books,*
    478 U.S. 697 (1986) .................................................. 23

*Baldwin County Welcome Ctr. v. Brown,*
    466 U.S. 147 (1984) .................................................. 21

*Barnes v. Glen Theatre, Inc.,*
    501 U.S. 560 (1991) .................................................. 23

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) ................................................... 28

*Borawski v. Henderson.,*
    265 F. Supp. 2d 475 (D.N.J. 2003) ............................... 21

iii

*Boy Scouts of America v. Dale*,
530 U.S. 640 (2000) ............................................................... 21

*Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*,
462 F.3d 219 (2d Cir. 2006) .................................................. 18

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997) ................................................ 21

*Central Hudson Gas & Electric Corporation v. Public Service Commission*,
447 U.S. 557 (1980) ............................................................ 27, 28

*Church of Human Potential, Inc. v. Vorsky*,
636 F. Supp. 93 (D.N.J. 1986) ............................................. 22

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................... 15

*Corus Staal BV v. Department of Commerce*,
395 F.3d 1343 (Fed. Cir. 2005) ............................................ 29

*Dallas v. Stanglin*,
490 U.S. 19 (1989) ............................................................... 22

*Doe v. Pryor*,
344 F.3d 1282 (11th Cir. 2003) ............................................ 14

*Emerson v. Thiel College*,
296 F.3d 184 (3d Cir. 2002) ................................................ 22

*Gilstrap v. United States*,
389 F.2d 6 (5th Cir. 1968) .................................................... 30

*Griswold v. Connecticut*,
381 U.S. 479 (1965) ............................................................. 24

*Hohe v. Casey*,
868 F.2d 69 (3d Cir. 1989) ................................................... 33

*Hoxworth v. Blinder Robinson & Co.*,
903 F.2d 186 (3d Cir. 1990) .............................................. 9, 34

*Hunt v. Washington State Apple Advertising Comm'n*,
432 U.S. 333 (1977) ............................................................. 11

iv

*Johnson v. United States,*
    529 U.S. 694 (2000) ................................................................. 32

*LCN Enters., Inc. v. City of Asbury Park,*
    197 F. Supp. 2d 141 (D.N.J. 2002) ................................. 8, 9, 27

*Laird v. Tatum,*
    408 U.S. 1 (1972) .............................................................. 12, 13

*Lawrence v. Texas,*
    539 U.S. 558 (2003) ....................................................... 2, 26, 27

*Louisiana v. NAACP,*
    366 U.S. 293 (1961) ................................................................ 23

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .......................................................... 11, 12

*Malia v. General Elec. Co.,*
    23 F.3d 828 (3d  Cir. 1994) .................................................... 21

*Mariana v. Fisher,*
    338 F.3d 189 (3d Cir. 2003) ............................................... 18, 19

*Medeiros v. Vincent,*
    431 F.3d 25 (1st Cir. 2005) .................................................... 18

*Morse v. Lower Merion Sch. Dist.,*
    132 F.3d 902 (3d Cir. 1997) ................................................... 21

*Northeast Ohio Coalition for Homeless & Serv. Employees Int'l Union v. Blackwell,*
    467 F.3d 999 (6th Cir. 2006) ................................................... 9

*Oldroyd v. Kugler,*
    352 F. Supp. 27 (D.N.J. 1973) ........................................... 12, 14

*Oxford Assocs. v. Waste System Auth. of East Montgomery County,*
    271 F.3d 140 (3d Cir. 2001) ................................................... 18

*Paton v. La Prade,*
    524 F.2d 862 (3d Cir. 1975) ................................................... 12

*Paul v. Davis,*
    424 U.S. 693 (1976) ............................................................... 26

*Pennsylvania Family Instit., Inc. v. Black,*
   489 F.3d 156 (3d Cir. 2006) ........................................................ 11

*Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh,*
   229 F.3d 435 (3d Cir. 2000) ........................................ 23, 24, 25

*Pic-A-State Pennsylvania, Inc. v. Reno,*
   76 F.3d 1294 (3d Cir. 1996) ........................................................ 19

*Pierce County, Washington v. Guillen,*
   537 U.S. 129 (2003) .................................................................... 18

*Poe v. Ullman,*
   367 U.S. 497 (1961) .............................................................. 10, 14

*Raines v. Byrd,*
   521 U.S. 811 (1997) .................................................................... 11

*Richardson v. Pennsylvania Bd. of Probation & Parole,*
   423 F.3d 282 (3d Cir. 2005) ........................................................ 32

*Roman Chariot, LLC v. JMRL Sales & Serv., Inc.,*
   2006 WL 4483165 (D.N.J. 2006) ................................................ 34

*Sacks v. Office of Foreign Assets Control,*
   466 F.3d 764 (9th Cir. 2006) ...................................................... 14

*Sampson v. Murray,*
   415 U.S. 61 (1984) ...................................................................... 34

*Schlesinger v. Reservists Comm. to Stop War,*
   418 U.S. 208 (1974) .................................................................... 12

*Steel Co. v. Citizens for a Better Envt.,*
   523 U.S. 83 (1998) ........................................................................ 9

*Tennessee Elec. Power Co. v. Tennessee Valley Auth.,*
   306 U.S. 118 (1939) .................................................................... 17

*Then v. INS,*
   37 F. Supp. 2d 346 (D.N.J. 1998) .................................................. 9

*Timken Co. v. United States,*
 354 F.3d 1334 (Fed. Cir. 2004) ............................................................. 30

*Truchinski v. United States,*
 393 F.2d 627 (8th Cir. 1968) ............................................................... 21

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
 898 F.2d 914 (3d Cir. 1990) ........................................................... 27, 28

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.,*
 517 U.S. 544 (1996) ............................................................................. 11

*United States v. Avarello,*
 592 F.2d 1339 (5th Cir. 1979) ............................................................. 31

*United States v. Barrow,*
 363 F.2d 62 (3d Cir. 1965) .................................................................. 30

*United States v. Borgese,*
 235 F. Supp. 286 (S.D.N.Y. 1964) ....................................................... 21

*United States v. Ceraso,*
 467 F.2d 653 (3d Cir. 1972) ................................................................ 30

*United States v. Darby,*
 312 U.S. 100 (1941) ............................................................................ 30

*United States v. Extreme Assocs., Inc.,*
 431 F.3d 150 (3d Cir. 2005) ........................................................... 24, 27

*United States v. Kelley,*
 254 F. Supp. 9 (S.D.N.Y. 1966), rev'd in part on other grounds,
 395 F.2d 727 (2d Cir. 1968) ................................................................ 21

*United States v. O'Brien,*
 391 U.S. 367 (1968) ............................................................................ 22

*United States v. Parker,*
 108 F.3d 38 (3d Cir. 1997) .................................................................. 30

*United States v. Smith,*
 209 F. Supp. 907 (E.D. Ill. 1962) ........................................................ 21

*United States v. Villano,*
    529 F.2d 1046 (10th Cir. 1976) ................................................................ 31

*Warth v. Seldin,*
    422 U.S. 490 (1975) ................................................................................. 10

*Weaver v. Graham,*
    450 U.S. 24 (1981) ................................................................................... 32

*Whitmore v. Arkansas,*
    495 U.S. 149 (1990) ................................................................................. 15

*Wyatt Virgin Islands, Inc. v. Government of Virgin Islands,*
    385 F.3d 801 (3d Cir. 2004) .................................................................... 20

## STATUTES

18 U.S.C. § 1084 ............................................................................................ 7, 21

18 U.S.C. § 1952 ............................................................................................... 30

18 U.S.C. § 1995 ............................................................................................... 31

19 U.S.C. § 2504(a) ........................................................................................... 29

19 U.S.C. § 3512(c)(1)(A) ............................................................................ 16, 29

19  U.S.C. § 3512(c)(1)(B) ................................................................................ 16

31 U.S.C. § 5361 ........................................................................................... passim

31 U.S.C. § 5362 ......................................................................................... 5, 25, 31

31 U.S.C. § 5363 ..................................................................................... 5, 6, 13, 28

31 U.S.C. § 5364 .......................................................................................... 6, 15

31 U.S.C. § 5365 .................................................................................................. 6

31 U.S.C. § 5366 .................................................................................................. 6

152 Cong. Rec. H7905 (Sept. 29, 2006) ................................................... 13, 31, 34

viii

72 Fed. Reg. 38846 (July 16, 2007) ............................................................. 16

Pub. L. 103-465, Title III, § 101(d), 108 ................................................... 16

Pub. L. 109-347, 120 Stat. 1884 (Oct. 13, 2006) ....................................... 4

**MISCELLANEOUS**

Internet Gambling Prohibition Act of 2006: Hearing on H.R. 4777 Before the
Subcomm. On Crime, Terrorism, and Homeland Security of the H. Comm. On the
Judiciary, 109th Cong. 10 (2006) ............................................................. 4

## INTRODUCTION

Plaintiff Interactive Media Entertainment & Gaming Association, Inc. ("Plaintiff") seeks the extraordinary remedy of a temporary restraining order to enjoin the enforcement of the Unlawful Internet Gambling Enforcement Act ("UIGEA") and its forthcoming regulations.  In making that argument, however, Plaintiff completely mischaracterizes that Act as analogous to the anti-sodomy law struck down in *Lawrence v. Texas*, 539 U.S. 558 (2003), because it allegedly reaches consensual activity conducted in the privacy of one's home.  Plaintiff then cobbles together various legal theories from constitutional jurisprudence in an effort to persuade this Court that the UIGEA also should be struck down.  The UIGEA, however, is a lawful exercise of Congress' authority under the Commerce Clause to assist states and the federal government in enforcing existing gambling laws.

Specifically, the Act prohibits gambling businesses from knowingly accepting monetary proceeds in connection with illegal internet gambling.  In forthcoming regulations to be jointly issued by the Federal Reserve Board and the Secretary of the Department of Treasury, certain financial institutions will be required to establish policies and procedures to identify and block or otherwise prevent or prohibit illegal gambling transactions.  Plaintiff's attempt to bring the UIGEA within the folds of strict scrutiny is therefore baseless.  None of the legal theories Plaintiff advances affords constitutional protection to illegal conduct.  Thus, Plaintiff is unlikely to succeed on the merits of its claims and therefore is not entitled to preliminary relief.  Without even considering those claims, however, this Court not only should deny such relief but dismiss this action altogether because Plaintiff has improperly invoked this Court's jurisdiction.

This Court's jurisdiction is limited by Article III of the Constitution to actions that present an actual case or controversy. Such actions involve a dispute appropriate for judicial resolution that is brought by a party with standing. This action involves neither. Plaintiff purports to sue on behalf of its members who fear prosecution under the UIGEA. None of Plaintiff's members, however, has been prosecuted or threatened with prosecution. Thus, their fears are insufficient to confer standing on them or on an association purporting to represent them. As to Plaintiff's other claims, Plaintiff lacks standing because it seeks to advance claims that only the states or the United States may bring. Without standing, Plaintiff is not properly before this Court.

But even if Plaintiff were, the Court should refrain from deciding this case as the claims here are unripe. The regulations that Plaintiff challenges have not even issued and thus this Court can only speculate as to their substance. Although prosecution under the UIGEA is theoretically possible, Plaintiff has not identified a single member or described its circumstances sufficiently for this Court to determine Plaintiff's as-applied constitutional challenge. The ripeness doctrine dictates that the Court refrain from adjudicating such a dispute.

Alternatively, denial of preliminary relief as well as dismissal is warranted because Plaintiff has failed to state a claim. Plaintiff alleges that the UIGEA and its forthcoming regulations violate the First Amendment, a World Trade Organization ruling, the Tenth Amendment, and the prohibition against ex post facto laws. Every one of these claims is unfounded. The UIGEA does not implicate any of the First Amendment protections because it does not regulate speech but prohibits facilitation of certain illegal conduct. Whatever its incidental impact on those protections, the UIGEA withstands constitutional scrutiny in

2

furthering an important government interest that is within Congress' power.

The UIGEA also withstands scrutiny under the Tenth Amendment. The Act is in furtherance of states' existing gambling prohibitions. Indeed, the UIGEA expressly provides that nothing in the Act should be construed as "altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b). Thus, Plaintiff's contention that the UIGEA constitutes an abrogation of power reserved to the states is completely unsubstantiated. Similarly, unsubstantiated is Plaintiff's claim that the UIGEA is an ex post facto law. Nothing in the Act suggests that it has retroactive application, and without such there can be no ex post facto violation. Finally, Plaintiff's suggestion that the UIGEA is inconsistent with a WTO ruling, even if true, is not grounds to invalidate the Act. By statute, if a WTO ruling is inconsistent with a congressional enactment, the latter is to be given effect.

Since Plaintiff's unlikelihood of success in this litigation is clear, preliminary relief is wholly unwarranted. Plaintiff additionally has not demonstrated any irreparable harm, a necessary element for such relief. Rather, Plaintiff suggests that such harm is established by virtue of Plaintiff's assertion of First Amendment rights. In this Circuit, however, irreparable injury must be demonstrated even when such rights are asserted. Because preliminary relief cannot be granted without both a likelihood of success on the merits and irreparable harm, this Court need not consider whether the balance of harms and the public interest support an injunction. Such consideration, however, also supports denial of Plaintiff's request.

This Court accordingly should deny Plaintiff's motion for a temporary restraining order and grant Defendants' cross-motion to dismiss.

3

**STATUTORY BACKGROUND**

On October 13, 2006, President Bush signed into law the Security and Accountability for Every Port Act of 2006. *See* Security and Accountability for Every Port Act of 2006, Pub. L. 109-347, 120 Stat. 1884 (Oct. 13, 2006). Title VIII of that Act is entitled the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"). Congress determined that "[n]ew mechanisms for enforcing gambling laws on the Internet are necessary because traditional law enforcement mechanisms are often inadequate for enforcing gambling prohibitions or regulations on the Internet, especially where such gambling crosses State or national borders." 31 U.S.C. § 5361(4); *see also* 31 U.S.C. § 5361(2) ("The National Gambling Impact Study Commission in 1999 recommended the passage of legislation to prohibit wire transfers to Internet gambling sites or the banks which represent such sites."). Additionally, Congress found that "Internet gambling is primarily funded through personal use of payment system instruments, credit cards, and wire transfers," and "Internet gambling is a growing cause of debt collection problems for insured depository institutions and the consumer credit industry." 31 U.S.C. § 5361(1), (3). The UIGEA is intended to address such concerns without "altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States." 31 U.S.C. § 5361(b). Thus, the Act excludes from its prohibitions certain intrastate and intratribal transactions as well as interstate horseracing permitted under the Interstate Horseracing Act of 1978.[1] *See* 31 U.S.C. § 5362(10).

---

[1] The Department of Justice publicly has stated that it does not believe that the Interstate Horseracing Act amended or repealed existing federal criminal statutes. *See* Internet Gambling Prohibition Act of 2006: Hearing on H.R. 4777 Before the Subcomm. on Crime, Terrorism, and Homeland Security of the H. Comm. on the Judiciary, 109th Cong. 10 (2006) (statement of Bruce G. Ohr, Chief, Organized Crime and Racketeering Section, Criminal Division, United

In recognition of the international component of unlawful internet gambling here in the United States, the UIGEA provides that "[i]n deliberations between the United States Government and any foreign country on money laundering, corruption, and crime issues, the United States Government should – [] encourage cooperation by foreign governments and relevant international fora in identifying whether Internet gambling operations are being used for money laundering, corruption or other crimes" and "advance policies that promote the cooperation of foreign governments, through information sharing and other measures, in the enforcement of this Act." 31 U.S.C. § 5361 note.

Section 5363 of the Act provides that "[n]o person engaged in the business of betting or wagering may knowingly accept, in connection with the participation of another person in unlawful Internet gambling – (1) credit, or the proceeds of credit, extended to or on behalf of such other person . . .; (2) an electronic fund transfer, or funds transmitted by or through a money transmitting business, or the proceeds of [such] . . .; (3) any check, draft, or similar instrument which is drawn by or on behalf of such other person and is drawn on or payable at or through any financial institution; or (4) the proceeds of any other form of financial transaction, as the Secretary and the Board of Governors of the Federal Reserve System may jointly prescribe by

---

States Department of Justice).  In passing the UIGEA, Congress recognized that a disagreement exists over that issue and therefore included a Sense of Congress provision (codified at 31 U.S.C. § 5362(10)(D)(iii)), that states: "It is the sense of Congress that this subchapter shall not change which activities related to horse racing may or may not be allowed under Federal law.  This subparagraph is intended to address concerns that this subchapter could have the effect of changing the existing relationship between the Interstate Horseracing Act and other Federal statutes in effect on the date of the enactment of this subchapter.  This subchapter is not intended to change that relationship.  This subchapter is not intended to resolve any existing disagreements over how to interpret the relationship between the Interstate Horseracing Act and other Federal statutes."

regulation, which involves a financial institution as a payor or financial intermediary on behalf of or for the benefit of such other person." 31 U.S.C. § 5363. The Secretary and the Board of Governors of the Federal Reserve System, in consultation with the Attorney General, shall additionally "prescribe regulations . . . requiring each designated payment system, and all participants therein, to identify and block or otherwise prevent or prohibit restricted transactions through the establishment of policies and procedures reasonably designed to identify and block or otherwise prevent or prohibit the acceptance of restricted transactions."[2] 31 U.S.C. § 5364(a). Although the UIGEA contemplated that such regulations would issue "[b]efore the end of the 270-day period beginning on the date of the enactment of this subchapter," they are still forthcoming. 31 U.S.C. § 5364(a).

Liability under the Act includes both civil and criminal remedies. The district courts of the United States "shall have original and exclusive jurisdiction to prevent and restrain restricted transactions by issuing appropriate orders in accordance with th[e Act], regardless of whether a prosecution has been initiated under this subchapter." 31 U.S.C. § 5365(a). A "person that identifies and blocks a transaction, prevents or prohibits . . . or otherwise refuses to honor a transaction that is restricted" or that "such person reasonably believes to be [] restricted" in an effort "to comply with regulations prescribed under subsection (a), shall not be liable to any party for such action." 31 U.S.C. § 5364(d). However, any person who violates Section 5363 shall be criminally liable and "fined . . . imprisoned for not more than 5 years, or both." 31 U.S.C. § 5366(a).

---

[2] The requirements under this Section shall be enforced by the "Federal functional regulators" and "the Federal Trade Commission." *See* 31 U.S.C. § 5364(e).

## PROCEDURAL BACKGROUND

On June 5, 2007, Plaintiff Interactive Media Entertainment and Gaming Association filed this declaratory action seeking to enjoin enforcement of the UIGEA, the forthcoming regulations to be jointly issued by the Federal Reserve Board and the Secretary of the Treasury, and the "provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 U.S.C. § 1084." Compl. ¶ 54c. Purporting to sue on its own behalf as well as its members who allegedly "engage in electronic gaming by and through the Internet . . . [either as] individuals and/or business entities," Plaintiff alleges that the UIGEA and unidentified statutory provisions violate the Constitution and international treaty obligations.

Specifically, Plaintiff alleges that the UIGEA violates the First Amendment by "impermissibly chill[ing its ] expressive association," (Compl. ¶ 48a), "impermissibly interfer[ing] with the personal privacy and consensual activities of those members of the public who wish to avail themselves of iMEGA members' services," (Compl. ¶ 62), and constituting a "more excessive [regulation of commercial speech] than is needed to serve any governmental interests," (Compl. ¶ 75). The Act also allegedly "violates the Tenth Amendment by unconstitutionally arrogating to the United States such express and implied reserved powers to the individual states to regulate gambling and the financial transfers, content neutral or not, associated therewith for the purpose of betting or wagering." Compl. ¶ 105. According to Plaintiff, the very enactment of the UIGEA "constitutes an ex post facto criminalization of iMEGA members' activities as well as those activities of the members of the public." Compl. ¶ 99.

7

Plaintiff further alleges that UIGEA violates a World Trade Organization ("WTO") order

"direct[ing] the United States to cease and desist in its illegal, restrictive trade practices."

Compl. ¶ 90.  That order allegedly issued in a WTO dispute arising from a grievance filed by the

sovereign nation of Antigua and Barbuda over the United States' treatment of that nation's

"nationals and resident corporations who are or who have engaged in the business of operating

Internet Casinos which are legal and permitted by [that nation's] sovereign laws." Compl. ¶ 82.

According to Plaintiff, because the UIGEA is inconsistent with that order, the Act is both ultra

vires and in violation of a WTO order.

Almost a week after filing the instant action, Plaintiff moved for a temporary restraining

order against enforcement of the Act and its forthcoming regulations allegedly because some of

Plaintiff's members "face imminent and immediate criminal arrest and prosecution for engaging

in the business of operating Internet Casinos which permit betting or wagering" and "imminent

financial ruin, closure, forfeiture and termination of their employees if the provisions of the Act

are implemented." Compl. ¶¶ 32-33.

## ARGUMENT

It is well established that "[i]njunctive relief is an extraordinary remedy, which should be

granted only in limited circumstances." *LCN Enters., Inc. v. City of Asbury Park*, 197 F. Supp.

2d 141, 145 (D.N.J. 2002).  In making that determination, this Court "must consider whether: (1)

the party seeking a preliminary injunction has shown a reasonable probability of success on the

merits; (2) the party will be irreparably injured by the denial of the relief; (3) granting

preliminary relief will result in even greater harm to the nonmoving party; and (4) granting the

preliminary relief will be in the public interest." *Id.*  An injunction is warranted "only if the

plaintiff produces evidence sufficient to convince the district court that all four factors favor preliminary relief." *Id.* Here, consideration of those factors compels not only denial of such relief but dismissal of this action.

## I.   PLAINTIFF HAS NO LIKELIHOOD OF SUCCESS ON THE MERITS OF ITS CLAIMS.

Plaintiff is unlikely to succeed on the merits of its claims and therefore is not entitled to a preliminary injunction. Although "it is not necessary that [Plaintiff's] right to a final decision after trial be wholly without doubt," Plaintiff "must demonstrate a reasonable probability of eventual success in the litigation." *LCN Enterprises*, 197 F. Supp. 2d at 145 (internal quotations omitted). A preliminary injunction cannot be granted without that demonstration. *Hoxworth v. Blinder Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) ("To obtain a preliminary injunction, the moving party must demonstrate [] a likelihood of success on the merits . . . ."). The jurisdictional deficiencies of Plaintiff's claims render it impossible for Plaintiff to make that demonstration here. *See Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83, 94 (1998) ("Without jurisdiction, the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."). Thus, this Court need not reach the dubious merits of the claims themselves because preliminary relief is unwarranted where the conditions precedent to this Court's jurisdiction are absent. *See Northeast Ohio Coalition for Homeless & Serv. Employees Int'l Union v. Blackwell*, 467 F.3d 999, 1010 (6th Cir. 2006) ("The weakness of plaintiffs' showing of standing leads us to conclude that their likelihood of success on the merits is not strong."); *Then v. INS*, 37 F. Supp. 2d 346, 352 (D.N.J. 1998) (concluding that plaintiff has

not established a reasonable likelihood of success on the merits because the jurisdiction of the court was not properly invoked).

"Article III of the Constitution confines the federal courts to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wright*, 468 U.S. 737, 750 (1984). In the absence of an actual case or controversy, the Court is without jurisdiction to decide the case. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975); *see also Poe v. Ullman*, 367 U.S. 497, 502 (1961). Thus, a court must ensure that its authority is invoked where there is "a lively conflict between antagonistic demands, actively pressed, which make resolution of the controverted issue a practical necessity," *id.* at 503 – a requirement "founded in concern about the proper – and properly limited – role of the courts in a democratic society," *Warth*, 422 U.S. at 498. Otherwise, "the courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights." *Id.* at 500. These considerations "press with special urgency in cases challenging legislative action . . . as repugnant to the Constitution" where the Supreme Court has admonished courts "not to entertain constitutional questions in advance of the strictest necessity." *Poe*, 367 U.S. at 503. Such necessity is clearly not present here.

A.   **Plaintiff's Claims Should be Dismissed for Lack of Standing.**

Plaintiff's failure to satisfy the requirements of associational standing or standing in its own right compels denial of its request for preliminary relief and dismissal of this action for lack of jurisdiction. *See* Plaintiff's Brief in Support of Issuance of Temporary Restraining Order ("Pl. Br.") at 20-21 (alleging that iMEGA has standing to assert its own claim of violation of expressive association as well as the claims of its members"). Standing is "an essential and

unchanging part of the case-or-controversy requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The standing inquiry is "especially rigorous when reaching the merits of the dispute would force [the Court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

The requirements of standing are well established. To sue in its own right, Plaintiff must demonstrate "(1) a cognizable injury that is (2) causally connected to the alleged conduct and is (3) capable of being redressed by a favorable judicial decision." *Pennsylvania Family Instit., Inc. v. Black*, 489 F.3d 156, 165 (3d Cir. 2006); *see also Lujan*, 504 U.S. at 560-61; *American Littoral Soc'y v. United States Envt'l Protection Agency Region*, 199 F. Supp. 2d 217, 230 (D.N.J. 2002). To sue on behalf of its members, Plaintiff must demonstrate 1) that it "seeks to protect [interests that] are germane to the organization's purpose"; 2) that its "members would otherwise have standing to sue in their own right"; and 3) that "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343 (1977); *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 552-53 (1996). The failure to satisfy any one of these elements is sufficient to defeat standing. That failure is evident as to each of the claims Plaintiff asserts.

11

### 1.   Plaintiff lacks standing to challenge the UIGEA under the First Amendment.

None of the three bases on with Plaintiff claims standing to challenge the UIGEA under the First Amendment is sufficient.  Each lacks the requisite injury in fact.  *See Lujan*, 504 U.S. at 560-61 (noting that the "irreducible constitutional minimum of standing contains three elements[, including that] . . . Plaintiff [] have suffered an 'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not "conjectural" or "hypothetical"'").  "Until a judicially cognizable injury is shown no other inquiry is relevant to consideration of [] standing."  *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 227 n.16 (1974).  This Court accordingly need not consider the remaining elements of standing as dismissal of Plaintiff's First Amendment claims is required on that basis.

### a.   Plaintiff's claim that the UIGEA has a chilling effect on members is insufficient to confer standing.

Plaintiff cannot properly predicate standing based on an alleged chilling of its members' expressive association.  *See* Compl. ¶ 48a (alleging that the "Act impermissibly chills [] expressive association in that iMEGA members are branded criminals and subjected to criminal prosecution, loss of freedom and seizure and/or forfeiture of property for engaging in association espousing safe, legal and responsible wagering").  "[I]t is not enough that [Plaintiff] claim[s] to 'feel inhibited' in the exercise of First Amendment rights."  *Oldroyd v. Kugler*, 352 F. Supp. 27, 29 (D.N.J. 1973).  Such an allegation cannot substitute for a claim of specific objective harm.  *See Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm . . . .");  *see also Paton v. La Prade*, 524 F.2d 862, 874 (3d Cir. 1975) (concluding that allegation that defendants' conduct

constituted an "inhibiting force" was insufficient to confer standing).  Plaintiff here has not

alleged one example of any member who was deterred from protected activity or other specific

objective harm to substantiate its claim of a chilling effect.

Moreover, Plaintiff has failed to demonstrate the connection between the alleged chill and

the UIGEA.  *See Laird*, 408 U.S. at 14 (concluding that plaintiffs' claim of a chilling effect was

not a cognizable injury where they "left somewhat unclear the precise connection between the

mere existence of the challenged system and their own alleged chill").  According to Plaintiff, the

Act impermissibly chills members from "espousing safe, legal and responsible wagering."

Compl. ¶ 48a.  The UIGEA, however, only imposes criminal liability for violations of Section

5363 which "[p]rohibits persons engaged in the business of betting or wagering from knowingly

accepting credit, funds, bank instruments, or proceeds of any other form of financial transaction

in connection with the participation of another person in unlawful Internet gambling."  152 Cong.

Rec. H8030; 31 U.S.C. § 5363; *see also* Compl. ¶ 28 (acknowledging that the Act imposes

criminal liability for violations of Section 5363).  Thus, the connection between that provision

and the activity that Plaintiff alleges has been chilled is not evident.  *See Aiello v. City of*

*Wilmington, Delaware*, 623 F.2d 845, 862 (3d Cir. 1980) (suggesting that a claim of an actual

chill may be sufficient to confer standing where there is a "*reasonable possibility* that a

regulation will be applied directly" to plaintiff (emphasis added)).  Moreover, because the

UIGEA relies on *existing laws* for its "in connection with . . . unlawful Internet gambling"

requirement, it is unlikely that the Act's specific prohibition has any independent chilling effect

at all.  *See* 31 U.S.C. § 5363.  For these additional reasons, Plaintiff's claim of a subjective chill

is inadequate to confer standing.

      **b.**      **Plaintiff has not alleged a credible threat of prosecution under the UIGEA sufficient to confer standing.**

Plaintiff's allegations of its members' fear of prosecution under the UIGEA also are insufficient to confer standing. *See* Compl. ¶ 32 (alleging that "some of the members of iMEGA face imminent and immediate criminal arrest and prosecution"). Fear of criminal prosecution is a cognizable injury only when the fear is objectively reasonable. *See Poe*, 367 U.S. at 508 (noting that the Court had passed upon criminal statutes in cases "grounded in a realistic fear of prosecution"); *see also ACLU v. Ashcroft*, 322 F.3d 240, 250 n.10 (3d Cir. 2003) ("The plaintiffs have standing to sue because they could all *reasonably* fear prosecution . . . ." (emphasis added)). In determining whether a plaintiff's fear is objectively reasonable, courts have considered factors such as the prosecution, threat of prosecution, or arrest of the plaintiff and the history of past prosecution. *See, e.g., Sacks v. Office of Foreign Assets Control*, 466 F.3d 764, 768 (9th Cir. 2006); *Doe v. Pryor*, 344 F.3d 1282, 1286 (11th Cir. 2003); *Oldroyd*, 352 F. Supp. at 30. Such consideration compels the conclusion that Plaintiff has not alleged an objectively reasonable fear of prosecution.

This action comes almost a year after the UIGEA was enacted. Yet, Plaintiff has not identified a single arrest, threatened prosecution, or actual prosecution of any of its members under that Act. Instead, "on information and belief," Plaintiff alleges "other persons and/or business entities situated identically to or substantially similar to some of the members of Plaintiff iMEGA" have been prosecuted "under other laws" in three different states. Compl. ¶ 34. Not one occurred in the state of New Jersey.

14

The only apparent explanation for the alleged sudden fear of prosecution is the Act's

Section 5364(a), which provides that "[b]efore the end of the 270-day period beginning on the

date of the enactment of this subchapter, the Secretary and the Board of Governors of the Federal

Reserve System, in consultation with the Attorney General, shall prescribe regulations [under the

Act]." 31 U.S.C. § 5364.  According to Plaintiff, that period ended July 10, 2007.  *See* Pl. Br. at

14.  Yet, as Plaintiff concedes, "[a]s of this date, no regulations have been introduced by the

Board, the Commission, or the Attorney General" and "no regulations have been adopted by any

of the Agencies required to do so." Pl. Br. at 14.  This Court clearly cannot base standing on

Plaintiff's speculation that its members will be liable under regulations not even in existence.

Those members' subjective fears of prosecution are simply not enough.  Plaintiff therefore

cannot predicate standing on that basis.

> **c.      Plaintiff's claim of its members' imminent financial ruin are
>          insufficient to confer standing.**

Plaintiff contends that  "some of the members of iMEGA face imminent financial ruin,

closure, forfeiture and termination of their employees if the provisions of the Act are

implemented." *See* Compl. ¶ 33.  That contention is insufficient to confer standing.  Allegations

of possible future injury "do not satisfy the requirements of Article III." *Whitmore v. Arkansas*,

495 U.S. 149, 158 (1990).  Rather, the alleged injury "must be certainly impending," *id.* (internal

quotation marks and citations omitted), and "real and immediate," *City of Los Angeles v. Lyons*,

461 U.S. 95, 102 (1983).  None of the allegations in the Complaint demonstrates that any of

Plaintiff's members faces immediate financial destruction – let alone as a result of the UIGEA.

To the extent that Plaintiff speculates that when the forthcoming regulations are implemented –

since the Act itself has been in effect since October 2006 – members will suffer financial ruin,

such rank speculation is also insufficient for standing purposes.

### 2. Plaintiff lacks standing to challenge the UIGEA's alleged violation of a WTO order.

Plaintiff lacks standing to maintain Counts Four and Five of the Complaint. *See* Compl.

¶ 85 (alleging that "the various Defendants, or each or all of them, . . . were, and remain so,

acting *ultra vires* by enacting and/or implementing the Act after the WTO had ruled the actions

of the United States violated a treaty to which the United States is a signatory"); Compl. ¶¶ 90-91

(alleging that adoption of the Act is an "illegal and restrictive trade practice[]" that the "WTO

has directed the United States to cease and desist").  Both Counts purport to challenge the

UIGEA as inconsistent with a WTO order.  By statute, however, "[n]o person other than the

United States" may bring such an action.[3]  *See* 19 U.S.C. § 3512(c)(1)(A) (providing that "[n]o

person other than the United States . . . shall have any cause of action or defense under any of the

Uruguay Round Agreements or by virtue of congressional approval of such an agreement");[4] 19

U.S.C. § 3512(c)(1)(B) (providing that "[n]o person other than the United States . . . may

challenge, in any action brought under any provision of law, any action or inaction by any

---

[3] Last month, in light of the developments in the WTO dispute that Plaintiff identifies, "the United States [] decided to make use of the established WTO procedures to correct its schedule in order to reflect the original U.S. intent – that is, to exclude gambling from the scope of the U.S. commitments under the GATS." 72 Fed. Reg. 38846, 38846 (July 16, 2007) ("Request for Public Comment on the Negotiations for Compensatory Adjustments to U.S. Schedule of Services Commitments Under WTO General Agreement on Trade in Services (GATS) in Response to Notice of the United States of Intent to Modify Its Schedule Under Article XXI of the GATS").

[4] The WTO is incorporated under the Uruguay Round Agreements. *See* Uruguay Round Agreement Act, Pub. L. 103-465, Title III, § 101(d), 108. Stat. 4945 (Dec. 8, 1994).

16

department, agency, or other instrumentality of the United States . . . on the ground that such action or inaction is inconsistent with such agreement"). Plaintiff accordingly is not a proper plaintiff and therefore is not likely to succeed on Counts Four and Five as both Counts should be dismissed for lack of standing.

> **3.   Plaintiff lacks standing to challenge the UIGEA as an ex post facto law.**

Plaintiff has not alleged any injury sufficient to confer standing to challenge the UIGEA under the Ex Post Facto Clause. As already discussed, none of Plaintiff's allegations demonstrates that its members face imminent danger of criminal prosecution under the UIGEA – let alone its retroactive application to already completed conduct. *See* Compl. ¶ 99 (alleging that "[e]nactment of the Act constitutes an *ex post facto* criminalization of iMEGA members' activities as well as those activities of the members of the public"). Thus, Plaintiff has no likelihood of success on its ex post facto claim as that claim too should be dismissed for lack of standing.

> **4.   Plaintiff lacks standing to challenge the UIGEA under the Tenth Amendment.**

Plaintiff clearly is an improper party to advance a claim that the UIGEA unlawfully encroaches on states' sovereign power. *See* Compl. ¶ 105 (alleging that "[t]he Act violates the Tenth Amendment by unconstitutionally arrogating to the United States such express and implied reserved powers to the individual states to regulate gambling and the financial transfers, content neutral or not, associated therewith for the purpose of betting or wagering"). The Supreme Court long ago suggested that private parties lack standing to assert such a claim under the Tenth Amendment. *See Tennessee Elec. Power Co. v. Tennessee Valley Auth.*, 306 U.S. 118, 144

17

(1939) (concluding that a private company, "absent the states or their officers, has no standing in this suit to raise any question under the [Tenth] amendment"). Lower courts since have held that until *Tennessee Electric Power* is overruled, private parties cannot bring a Tenth Amendment claim. *See Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 236 (2d Cir. 2006) (concluding that "*Tenn. Elec.* here controls, and the district court erred by ruling otherwise and by failing to dismiss the plaintiffs' Tenth Amendment claim pursuant to Rule 12(b)(1)"); *Medeiros v. Vincent*, 431 F.3d 25, 34, 35 (1st Cir. 2005) (concluding that the "United States Supreme Court has held that private citizens lack standing to maintain Tenth Amendment claims" and expressing "reluctan[ce] to second-guess the continuing viability of *TVA* regarding so complex an issue"); *see also Pierce County, Washington v. Guillen*, 537 U.S. 129, 147 n.10 (2003) (declining to reach question "whether private plaintiffs have standing to assert 'states' rights' under the Tenth Amendment"). That conclusion, alternatively, follows as a prudential matter.

In addition to its constitutional components, the doctrine of standing is comprised of prudential components. *See Oxford Assocs. v. Waste System Auth. of East Montgomery County*, 271 F.3d 140, 145 (3d Cir. 2001). The prudential components "address the need for judicial restraint" to ensure that "the plaintiff is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Mariana v. Fisher*, 338 F.3d 189, 204 (3d Cir. 2003). The Third Circuit has established a three-part test for determining whether a plaintiff satisfies prudential standing: (1) whether plaintiff is "assert[ing] his or her own legal interests rather than those of a third party;" (2) whether plaintiff's claim presents "abstract questions of wide public significance amounting to generalized grievances;" and (3) whether plaintiff's

"interests are arguably within the 'zone of interests' that are intended to be protected by the statute, rule, or constitutional provision on which a claim is based." *Id.* at 205.  Plaintiff's Tenth Amendment claim clearly fails that test.

Fatal to Plaintiff's claim of prudential standing is that the alleged Tenth Amendment violation asserts states' legal interests not those of Plaintiff.  *See Mariana*, 338 F.3d at 205 ("prudential standing *requires* that a litigant assert his or her own legal interests" (emphasis added)); *see also* Compl. ¶ 105 (alleging that UIGEA "unconstitutionally arrogat[es] to the United States such express and implied reserved powers to the individual states").  Plaintiff's claim additionally raises a generalized grievance concerning the extent to which the federal government can assist in enforcement of state criminal laws; yet another reason for this Court to exercise judicial restraint.  Notwithstanding the Tenth Amendment's reference to "the people," Plaintiff's claim is clearly based on the provision having only to do with the states, (Compl. ¶ 105), and thus Plaintiff is not within its zone of interest.  *See* Const. Amend. X ("The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.").  Since Plaintiff's Tenth Amendment claim satisfies none of the requirements of prudential standing, that claim should be dismissed and accordingly has no reasonable likelihood of success.

### B.      Plaintiff's Claims Should Be Dismissed as Unripe.

The "concepts of standing and ripeness require related but distinct inquiries." *Pic-A-State Pennsylvania, Inc. v. Reno*, 76 F.3d 1294, 1298 n.1 (3d Cir. 1996).  Whereas, "standing focuses on *who* may bring a[n ] action," "ripeness is concerned with *when* an action may be brought." *Id.* The ripeness requirement prevents "courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements." *Wyatt Virgin Islands, Inc. v. Government of Virgin Islands*, 385 F.3d 801, 806 (3d Cir. 2004). In making that determination, the Court "must consider the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* (internal quotations omitted). A dispute is unripe if it rests upon contingent future events or is based upon assumed potential invasions of rights. *Id.* (characterizing as "not ripe for judicial determination," a dispute "that rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all" or "[c]laims based merely upon assumed potential invasions of rights" (internal quotations omitted)). Since the instant action is such a dispute, Plaintiff's claims are unlikely to succeed on that independent ground and should be dismissed for lack of ripeness.

Plaintiff's challenge here is an exercise in speculation. While acknowledging that the regulations the Act contemplates the Federal Reserve Board and the Secretary jointly will prescribe have yet to issue, (e.g., Compl. ¶¶ 54b, 65b, 78b, 88b, 93b), Plaintiff seeks an order from this Court enjoining those regulations as violative of the Constitution and WTO. *See* Pl. Br. at 14, 18 (recognizing that "[a]s of this date, no regulations have been introduced by the Board, the Commission, or the Attorney General" nor "adopted by any of the Agencies required to do so" yet requesting a "Temporary Restraining Order to restrain the enforcement of any . . . regulatory authority under the Act"). Only by speculating along with Plaintiff as to what those regulations will prescribe can this Court possibly make that determination. Moreover, while prosecution of Plaintiff's members under the UIGEA itself – as opposed to the forthcoming regulations – is theoretically possible, Plaintiff has not alleged that any of its members has been threatened with such prosecution. Thus, there is no factual context whatsoever for this Court to

20

consider Plaintiff's as-applied constitutional challenge. *See* Compl. ¶ 53 (alleging that the "Act,

as applied to these facts, is unconstitutional thereby"). This Court is again left to speculate as to

that context or alternatively decide this action on an inadequate record. The ripeness doctrine,

however, dictates that this Court do neither and instead dismiss this action as unripe.

### C.   Plaintiff's Claims Should Be Dismissed for Failure to State a Claim.

Even if this Court concludes that it has jurisdiction over Plaintiff's claims, those claims

nevertheless have no reasonable likelihood of success as they should be dismissed for failure to

state a claim.[5] *See* Fed. R. Civ. P. 12(b)(6). Although in deciding a motion to dismiss for failure

to state a claim, the Court must accept "all facts alleged in the complaint and all reasonable

inferences that can be drawn from them . . . as true," the Court "need not credit bald assertions or

legal conclusions alleged in the complaint." *Malia v. General Elec. Co.*, 23 F.3d 828, 830 (3d

Cir. 1994); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997); *In re*

---

[5] To the extent Plaintiff purports to challenge unidentified statutory provisions, Plaintiff has failed to put Defendants on sufficient notice of those claims. *See Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 149-50 n.3 (1984) (noting that "the pleadings [must] give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"); *Borawski v. Henderson.* 265 F. Supp. 2d 475, 481 (D.N.J. 2003) (same); *see, e.g.,* Compl. ¶ 54c (requesting an order restraining Defendants "from enforcing the provisions of any other Act, statute, law, rule and/or regulation of the United States but not limited to the Wire Act, 18 U.S.C. § 1084"). If by that allegation, Plaintiff intends to challenge the Wire Act, 18 U.S.C. § 1084, that challenge fails for the reasons discussed in the text. Numerous courts – often after little analysis – have rejected such challenges to the Wire Act. *See, e.g., Truchinski v. United States*, 393 F.2d 627, 634 (8th Cir. 1968) ("the provisions of Section 1084 do not trespass on the first amendment guarantee of free speech"); *United States v. Kelley*, 254 F. Supp. 9, 14-15 (S.D.N.Y. 1966) (same), *rev'd in part on other grounds*, 395 F.2d 727 (2d Cir. 1968); *United States v. Borgese*, 235 F. Supp. 286, 296 (S.D.N.Y. 1964) (upholding the Wire Act against a constitutional challenge because "[t]he First Amendment is not applicable where criminal conduct is involved"); *United States v. Smith*, 209 F. Supp. 907, 918 (E.D. Ill. 1962) (the Wire Act "do[es] not restrict freedom of speech; [it] merely prohibit[s] the use of interstate facilities to certain conduct which the Congress has declared to be illegal.").

*Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997); *see also Church of Human Potential, Inc. v. Vorsky*, 636 F. Supp. 93, 95-96 (D.N.J. 1986) (holding that plaintiff's conclusory allegations were insufficient to state a claim).  A complaint can withstand such a motion only "if the material facts as alleged, in addition to inferences drawn from those allegations, provide a basis for recovery." *Emerson v. Thiel College*, 296 F.3d 184, 188 (3d Cir. 2002).  None of the bases on which Plaintiff seeks recovery is well founded.  Thus, Plaintiff's claims cannot withstand dismissal and therefore are unlikely to succeed on the merits.

**1.      Plaintiff Has not Stated a Claim of a First Amendment Violation.**

Plaintiff completely misconstrues the UIGEA in an effort to bring it within the purview of the First Amendment.  *See* Pl. Br. at 24 (asserting that "the first reason that the court should restrain any further enforcement of the UIGEA is because it unconstitutionally interferes with private conduct"); Pl. Br. at 29 (inviting the Court to "focus, not on the anecdotal public morality arguments advanced to support the UIGEA's enactment, but on the zone of fundamental privacy guaranteed by the Constitution where Internet gambling occurs"); Pl. Br. at 35 (alleging that the UIGEA "strikes too broad, too deep, too wide into private conduct"); *see also* Compl. ¶ 56 (alleging that "[t]he bettors who seek entertainment by and through iMEGA members' Internet Casinos engage in such conduct by computer through the Internet, and overwhelmingly from the privacy of their personal computers").  Although "[i]t is possible to find some kernel of expression in almost every activity a person undertakes . . . such a kernel is not sufficient to bring the activity within the protection of the First Amendment." *Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).  Indeed, courts have rejected "the view that an apparently limitless variety of conduct can be labeled 'speech.'" *United States v. O'Brien*, 391 U.S. 367, 376 (1968).  The conduct

regulated by the UIGEA – the knowing acceptance by a gambling business of the proceeds of an

illegal internet gambling transaction – is not protected.  *See, e.g., Louisiana v. NAACP*, 366 U.S.

293, 297 (1961) (noting that "criminal conduct [] cannot have shelter in the First Amendment").

Moreover, Plaintiff does not – nor can it – allege that such conduct either "contain[s] or

manifest[s] protected expression." *Pi Lambda Phi Fraternity, Inc. v. University of Pittsburgh*,

229 F.3d 435, 446 (3d Cir. 2000); *see, e.g.,* Compl. ¶ 48c (alleging that the UIGEA

"criminaliz[es] content-neutral conduct"); Compl. ¶ 59 (alleging that "the Act punishes as a

criminal act any content-neutral transmittal of the funds used for a bet or wager if the originating

point or end point makes Internet gambling illegal").

     As a regulation of unprotected conduct that itself neither contains nor manifests protected

expression, the UIGEA is not subject to First Amendment scrutiny at all.  *See Pi Lambda*, 229

F.3d at 446; *see, e.g., Arcara v. Cloud Books*, 478 U.S. 697, 707 (1986) (concluding that "the

First Amendment is not implicated by the enforcement of a public health regulation of general

application against [an adult bookstore]"); *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 572

(1991) (Scalia, J., concurring in the judgment) ("a general law regulating conduct and not

specifically directed at expression, [] is not subject to First Amendment scrutiny at all").  Even if

protected expression is indirectly affected by such a regulation, "no First Amendment violation

ha[s] occurred, because '[a]ny other conclusion would lead to the absurd result that any

government action that had some conceivable speech-inhibiting consequences . . . would require

analysis under the First Amendment." *Pi Lambda*, 229 F.3d at 446; *see also Arcara*, 478 U.S. at

708 (O'Connor, J., concurring).  Thus, the Court can easily reject Plaintiff's attempts here to

subject the UIGEA to such analysis.  *See* Pl. Br. at 23 (erroneously asserting that strict scrutiny

applies here); *see also* Pl. Br. at 30-35 (alleging that the UIGEA is unconstitutional because it is not "the least restrictive means to regulate private consensual conduct on the internet").[6]

> **a.     The UIGEA is not an unconstitutional interference with Plaintiff's right of association.**

Plaintiff has failed to a state a claim of a violation of its right of expressive association. The First Amendment's "protection of expressive association is not reserved for advocacy groups." *Boy Scouts of America v. Dale*, 530 U.S. 640, 648 (2000); *see also Pi Lambda*, 229 F.3d at 443 (noting that "[t]he Supreme Court has cast a fairly wide net in its definition of what comprises expressive activity"). An organization, however, "must do more than simply claim to be an expressive association in order to receive the benefits of constitutional protection." *Id.* at 444. Plaintiff here claims to be an expressive association. *See* Compl. ¶ 39 (alleging that the UIGEA interferes with "activities, such as lobbying, marketing and publication, which are calculated to advocate for public and private rights of its members and those private individuals who use iMEGA members' Internet Casinos to engage in legal Internet Casino gambling"). That claim, however, is not substantiated by any specific facts.

But even if the Court credits that unsubstantiated assertion, the UIGEA does not unconstitutionally interfere with Plaintiff's expressive activities. That determination requires the Court to consider whether the Act significantly affects Plaintiff's ability to advocate its viewpoints. *See, e.g., Pi Lambda*, 229 F.3d at 447 (concluding that plaintiffs' expressive rights

---

[6] Strict scrutiny is reserved for direct regulations of speech or expression. *See Pi Lambda*, 229 F.3d at 445-56 (noting that "[t]he most rigorous standard of review is triggered when the [government] action directly burdens expressive rights"). To survive strict scrutiny, a statute "must be narrowly tailored to further a compelling state interest." *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 153 n.7 (3d Cir. 2005); *see also Griswold v. Connecticut*, 381 U.S. 479, 497-98 (1965).

were not unconstitutionally infringed by a state sanction of activities "that themselves had no protective expressive element" and only indirectly affected those rights).

Clearly, the UIGEA does not interfere with Plaintiff's ability to engaged in its alleged expressive activities: "advocat[ing] for public and private rights of its members . . . to engage in *legal* Internet Casino gambling."[7]  Compl. ¶ 39 (emphasis added).  At best, there is only an indirect relationship between the UIGEA's prohibitions and Plaintiff's expressive association. *See, e.g., Pi Lambda*, 229 F.3d at 446 (characterizing the relationship between a regulation and protected expression as "indirect" where the regulation "does not require [plaintiff] to associate with anyone, nor is . . . directed on its face at [plaintiff's] expressive associational activities"). The UIGEA therefore does not unconstitutionally infringe on Plaintiff's expressive association. *See id.* at 447 (holding that where "the effect of the state action on the expressive rights was indirect [] there is thus no constitutionally impermissible infringement on the [] right of expressive association").  Thus, Plaintiff has failed to state a claim of such a violation.

---

[7]  Plaintiff improperly characterizes the UIGEA as imposing "restrictions [on] . . . providing any information regarding on-line gambling in 31 U.S.C. 5362(1)(D)."  Pl. Br. at 33. That provision is merely part of the statutory definition of "Bet or wager" and not a description of conduct prohibited by the UIGEA.  *See* 31 U.S.C. § 5362(1)(D) (defining "Bet or wager" as "includ[ing] any instructions or information pertaining to the establishment or movement of funds by the bettor or customer in, to, or from an account with the business of betting or wagering").

**b.      The UIGEA does not violate Plaintiff's right of privacy.**

Plaintiff contends that the UIGEA infringes bettors' right of privacy because internet gambling is conducted "overwhelmingly from the privacy of their personal computers."  Compl. ¶ 56; *see also* Compl. ¶ 62 (alleging that "[t]he Act impermissibly interferes with the personal privacy and consensual activities of those members of the public who wish to avail themselves of iMEGA members' services").  That contention extends the right of privacy too far.  Two types of privacy interests have been recognized: "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions.  The latter decisions have encompassed matters relating to marriage, procreation, contraception, family relationships, and child rearing and education."  *American Future Sys., Inc. v. Pennsylvania State Univ.*, 688 F.2d 907, 915 (3d Cir. 1982) (internal quotations omitted); *see also Paul v. Davis*, 424 U.S. 693, 713 (1976).  The right of an individual to engage in internet gambling is hardly of the same ilk.  But even if that activity is a protected privacy interest, the UIGEA does not reach such activity.

Plaintiff's attempt to recast the UIGEA as analogous to the anti-sodomy law in *Lawrence v. Texas*, 539 U.S. 558 (2003), is therefore disingenuous.  *See* Pl. Br. at 23-30.  That law prohibited consensual sodomy between members of the same sex in the privacy of their own home.  As Plaintiff acknowledges, the Court in those circumstances recognized that "[l]iberty presumes an autonomy of self that includes freedom of thought, belief, expression, and certain intimate conduct."  Pl. Br. at 23 (quoting *Lawrence*, 539 U.S. at 562).  Internet gambling clearly does not implicate those same freedoms.

26

Plaintiff also suggests that the UIGEA is "squarely on all fours with *Lawrence*" because sponsors of the Act regarded "gambling on the Internet, as a moral dilemma," which the *Lawrence* Court rejected as justification for the anti-sodomy law.  Pl. Br. at 24.  The Third Circuit, however, has rejected such an argument in cases challenging regulations on the distribution of obscenity.  *See Extreme Associates*, 431 F.3d at 161 (holding that it was "impermissible for the District Court to strike down the statutes at issue based on speculation that . . . other pivotal obscenity cases appear[] to rest on reasons rejected in *Lawrence*" (internal quotations omitted)).  Thus, *Lawrence* is clearly not dispositive of the issue here.  Plaintiff accordingly has not stated a claim that the UIGEA violates individuals' privacy interests.

### c.    The UIGEA does not regulate commercial speech.

Plaintiff's final invitation to subject the UIGEA to First Amendment scrutiny also should be rejected.  *See* Compl. ¶¶ 66-78 (alleging that the UIGEA interferes with iMEGA members' protected commercial speech).  The Constitution protects "speech which is commercial in nature, and truthful and non-misleading about lawful activities."  *LCN Enterprises*, 197 F. Supp. 2d at 151.  Such speech "may be broadly defined as expression related to the economic interests of the speaker and its audience."  *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir. 1990).  The test for determining whether a regulation is an unconstitutional restriction on commercial speech is set forth in *Central Hudson Gas & Electric Corporation v. Public Service Commission*, 447 U.S. 557 (1980):

> For commercial speech to come within (the First Amendment), it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation directly advances the government interest asserted, and whether it is not more extensive than is necessary to serve that

interest.

*Id.* at 566.  Here again, Plaintiff fundamentally misapprehends the law in construing the UIGEA

as a regulation on commercial speech.[8]  *See* Compl. ¶¶ 67-71 (alleging that Plaintiff advertises its

activities in various media and that the UIGEA "criminalizes as false the representation by

iMEGA members that they operate legally").  But even if the UIGEA were such a regulation, it

satisfies *Central Hudson*.

The government's interest in providing an effective mechanism for "enforcing gambling

laws on the Internet" where "such gambling crosses State or national borders" is clearly

substantial.  *See* 31 U.S.C. §5361(4).  In furtherance of that interest, the UIGEA prohibits a

person engaged in the business of betting or wagering from knowingly accepting monetary

instruments (e.g., credit, electronic fund transfer, check) "in connection with the participation of

another person in unlawful Internet gambling."  31 U.S.C. § 5363.  That provision's scienter

element and illegality requirement ensure that the prohibition is not more extensive than

necessary.  Indeed, the UIGEA makes plain that it is not intended to "alter[], limit[], or extend[]

any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling

within the United States."  31 U.S.C. § 5361(b).  Thus, even if *Central Hudson* were applicable,

Plaintiff has failed to state a claim of an unconstitutional regulation of commercial speech.

---

[8]  The Supreme Court has identified three factors the Court should consider in deciding whether speech is commercial: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the speech.  An affirmative answer to all three questions provides 'strong support' for the conclusion that the speech is commercial."  *U.S. Healthcare*, 898 F.2d at 933 (citation omitted); *see also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983).  Applying these factors to a gambling business's acceptance of a credit, check, or like instrument in connection with unlawful Internet gambling – the conduct regulated by the UIGEA – does not provide such support for that conclusion.

### 2. Plaintiff's Allegation of an Inconsistency Between the UIGEA and a WTO Ruling Fails to State a Claim.

Counts Four and Five of the Complaint are variations on the same theme, namely, that the UIGEA should be enjoined because it violates a WTO ruling. *See* Compl. ¶ 85 (alleging that "[t]he Congress of the United States, in enacting the Act, and the United States in agreeing to be bound by the Act, and the various Defendants, or each or all of them, by enforcing, investigating, proposing and/or enacting regulations, rules or procedures pursuant thereto, were, and remain so, acting *ultra vires* by enacting and/or implementing the Act after the WTO had ruled the actions of the United States violated a treaty to which the United States is a signatory"); Compl. ¶¶ 90-91 (alleging that "[t]he WTO has directed the United States to cease and desist in its illegal, restrictive trade practices . . . including the adopting of the Act"). That contention is predicated on the flawed assumption that WTO rulings have priority over domestic law.

Although, whenever possible, "courts should interpret U.S. law . . . in a manner consistent with international obligations," such obligations do not "trump[] domestic legislation." *Corus Staal BV v. Department of Commerce*, 395 F.3d 1343, 1347-48 (Fed. Cir. 2005). Indeed, by statute, "[n]o provision of any of the Uruguay Round Agreements, nor the application of any such provision to any person or circumstance, that is inconsistent with any law of the United States shall have effect." 19 U.S.C. § 3512(a); *see also* 19 U.S.C. § 2504(a) ("No provision of any trade agreement . . . nor the application of any such provision to any person or circumstance, which is in conflict with any statute of the United States shall be given effect under the laws of the United States."). Thus, even if the UIGEA is inconsistent with a WTO ruling, this Court cannot properly give that ruling binding effect. *See Corus Staal*, 395 F.3d at 1348 ("WTO

29

decisions are not binding on the United States, much less this court." (internal quotations omitted)); *see also Timken Co. v. United States*, 354 F.3d 1334, 1344 (Fed. Cir. 2004) (same). Counts Four and Five of the Complaint are therefore without merit and should be dismissed for failure to state a claim.

### 3. The UIGEA Is a Constitutional Exercise of Congress' Authority Under the Commerce Clause and Therefore Does Not Violate the Tenth Amendment.

Plaintiff's contention that the UIGEA "violates the Tenth Amendment by unconstitutionally arrogating to the United States [] express and implied reserved powers to the individual states to regulate gambling and the financial transfers . . . associated therewith" is unfounded.  Compl. ¶ 105.  It is well settled that the Tenth Amendment "does not operate as a limitation upon the powers delegated to the Congress by the Commerce Clause." *United States v. Barrow*, 363 F.2d 62, 65 (3d Cir. 1965); *see also United States v. Parker*, 108 F.3d 28, 31 (3d Cir. 1997) ("If Congress acts under one of its enumerated powers – here its power under the Commerce Clause – there can be no violation of the Tenth Amendment").  That is so even if the exercise of that authority "is attended by the same incidents which attend the exercise of the police power of the states." *United States v. Darby*, 312 U.S. 100, 114 (1941).

The "power of Congress to regulate commerce has been used before to prohibit the use of interstate facilities to effect an illegal purpose." *Gilstrap v. United States*, 389 F.2d 6, 8 (5th Cir. 1968); *see also United States v. Ceraso*, 467 F.2d 653, 657-58 (3d Cir. 1972) (agreeing with other courts that federal regulation of gambling is "within the power granted the Federal Government under the Commerce Clause").  Thus, courts repeatedly have upheld such regulation against Tenth Amendment challenges. *See, e.g., Gilstrap*, 389 F.2d at 8 (upholding 18 U.S.C. §

1952, which prohibits the use of freight, telephone, and telegraph facilities in interstate commerce with intent to carry on unlawful gambling, against Tenth Amendment challenge); *United States v. Villano*, 529 F.2d 1046, 1056 (10th Cir. 1976) (same); *United States v. Avarello*, 592 F.2d 1339, 1345 (5th Cir. 1979) (upholding 18 U.S.C. § 1995, which prohibits conducting an illegal gambling business, against a Tenth Amendment challenge). That same result is compelled here.

The UIGEA is plainly an exercise of Congress's power under the Commerce Clause. *See* 152 Cong. Rec. H7905, H8029 (Sept. 29, 2006) (regarding UIGEA as a "new mechanism[] for enforcing gambling laws on the Internet . . . because traditional law enforcement mechanisms are often inadequate for enforcing gambling prohibitions on the Internet, *especially where such gambling crosses State or national borders*" (emphasis added)). Moreover, in several of its sections, the Act disavows any intent or design to encroach upon states' authority. *See* 31 U.S.C. § 5361(b) ("No provision of this subchapter shall be construed as altering, limiting, or extending any Federal or State law or Tribal-State compact prohibiting, permitting, or regulating gambling within the United States"); 31 U.S.C. § 5362(10)(B) (excluding from definition of "Unlawful Internet Gambling" intrastate transactions). The Court accordingly should uphold the UIGEA against Plaintiff's Tenth Amendment challenge.

### 4. The UIGEA Does Not Apply Retroactively and Therefore Does Not Violate the Ex Post Facto Law.

Plaintiff's contention that the UIGEA is an ex post facto law plainly misapprehends that prohibition. *See* Compl. ¶ 96 (alleging that the Act is an ex post facto law because it prohibits conduct that "courts had previously declared . . . [wa]s not an illegal act under then existing laws

of the United States"). "The ex post facto prohibition forbids the Congress and the States to enact any law which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed." *Weaver v. Graham*, 450 U.S. 24, 28 (1981). For a criminal law to be ex post facto, two critical elements must be present: "it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Id.* at 29; *see also Richardson v. Pennsylvania Bd. of Probation & Parole*, 423 F.3d 282, 287-88 (3d Cir. 2005). "With no retroactivity, there c[an] be no Ex Post Facto Clause violation." *Johnson v. United States*, 529 U.S. 694, 699 (2000). Nothing in the UIGEA indicates that it applies retroactively, and Plaintiff has alleged no facts to the contrary. That absence is fatal to Plaintiff's ex post facto claim and compels its dismissal.

## II.   PLAINTIFF HAS NOT ESTABLISHED THAT IT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF AN INJUNCTION.

Apparently misapprehending the applicable legal standard, Plaintiff gives short shrift to a necessary element of preliminary relief – irreparable harm. *See* Pl. Br. at 20. A plaintiff must *demonstrate* irreparable harm in order to obtain such relief. *See Adams v. Freedom Forge*, 204 F.3d 475, 484 (3d Cir. 2000); *Acierno v. New Castle County*, 40 F.3d 645, 653 (3d Cir. 1994). Plaintiff here makes no attempt at such a demonstration. Instead, Plaintiff assumes that irreparable harm is established by virtue of the assertion of First Amendment violations. *See* Pl. Br. at 20 ("Such being the case, however, '[t]he loss of First Amendment freedoms for even minimal periods of time, unquestionably constitutes irreparably injury'"). Although courts have remarked that even a brief loss of First Amendment freedoms is irreparable harm, that statement

32

speaks only to the requisite duration of a deprivation.  Nothing in that statement signals an intent "to do away with the traditional prerequisites for injunctive relief simply because First Amendment freedoms [a]re implicated." *Anderson v. Davila*, 125 F.3d 148, 164 (3d Cir. 1997); *see also Hohe v. Casey*, 868 F.2d 69, 72-73 (3d Cir. 1989) (observing that "the assertion of First Amendment rights does not automatically require a finding of irreparable injury").  Thus, even when such rights are asserted, as here, a plaintiff must demonstrate irreparable harm to obtain preliminary relief.  *See Adams*, 204 F.3d at 487 ("We have repeatedly insisted that the use of judicial power to arrange relationships prior to a full determination on the merits is a weighty matter, and the preliminary injunction device should not be exercised unless the moving party shows that it specifically and personally risks irreparable harm.").

Plaintiff has utterly failed to do so.  Other than purportedly addressing the merits of its constitutional claims and asserting the truism about the requisite duration of a First Amendment deprivation, Plaintiff's motion contains no discussion of the irreparable harm Plaintiff will suffer in the absence of an injunction.  *See* Pl. Br. at 42 (asserting in the Conclusion that "the threatened injury to First Amendment protected rights outweighs the lack of damage if the UIGEA is not restrained").  As already discussed, Plaintiff's claims of constitutional violations are unfounded and therefore not even a brief loss of First Amendment freedoms has been shown.

In a single sentence, Plaintiff additionally implies that its members will suffer substantial economic loss from enforcement of the Act.  *See* Pl. Br. at 20 ("An act that threatens an ongoing business with destruction causes that business irreparable injury, whether viewed as an injury not compensable in monetary terms or as one which cannot be reduced to monetary value with 'sufficient accuracy to make damages an adequate substitute' for injunctive relief.").  However,

not even significant economic loss constitutes irreparable harm. *See Acierno*, 40 F.3d at 653. "Mere injuries, however substantial, in terms of money . . . are not enough." *Sampson v. Murray*, 415 U.S. 61, 90 (1974); *Acierno*, 40 F.3d at 653 (same); *Roman Chariot, LLC v. JMRL Sales & Serv., Inc.*, 2006 WL 4483165, at *5 (D.N.J. 2006) (same). Since nothing in Plaintiff's motion comes close to establishing the requisite irreparable harm, Plaintiff's request must be denied.

## III.    THE BALANCE OF HARMS AND PUBLIC INTEREST DO NOT SUPPORT AN INJUNCTION.

Since Plaintiff failed to demonstrate either a likelihood of success on the merits or irreparable injury, this Court need not consider the remaining elements for a preliminary injunction. *See Hoxworth*, 903 F.2d at 197 ("To obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted."). Such consideration, however, supports denial of preliminary relief.

The congressional findings that precipitated the enactment of the UIGEA demonstrate that its enforcement is clearly in the public interest. *See* 152 Cong. Rec. H8029 (concluding that "Internet gambling is a growing cause of debt collection problems for insured depository institutions and the consumer credit industry"). While the Act does not "have the effect of changing the legality of any gambling-related activity in the United States," the UIGEA is a "new mechanism" for enforcing gambling laws already in existence. 152 Cong. Rec. H8026. Thus, the UIGEA will provide much needed assistance to states and the federal government in their effort to enforce gambling prohibitions. *See* 31 U.S.C. § 5361(a)(4) (concluding that "[n]ew mechanisms for enforcing gambling laws on the Internet are necessary because traditional law

enforcement mechanisms are often inadequate for enforcing gambling prohibitions or regulations on the Internet, especially where such gambling crosses State or national borders"). An injunction therefore certainly cannot be justified as in the public interest. The balance of harms compels that this Court deny Plaintiff's request.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's motion for a temporary restraining order, grant Defendants' cross-motion, and dismiss this action.

August 21, 2007

Respectfully submitted,

CHRISTOPHER J. CHRISTIE
United States Attorney

PETER D. KEISLER
Assistant Attorney General

VINCENT M. GARVEY
Deputy Branch Director


/s Jacqueline Coleman Snead
JACQUELINE COLEMAN SNEAD
(D.C. Bar No. 459548)
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W., Rm 7214
Washington, DC 20530
Tel: (202) 514-3418
Fax: (202) 616-8470
jacqueline.snead@usdoj.gov

**Counsel for Defendants**

35

**CERTIFICATE OF SERVICE**

I certify that on this 21st day of August 2007, I caused a copy of the foregoing

Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and

Memorandum in Support of Defendants' Cross-Motion to Dismiss to be filed electronically and

that the document is available for viewing and downloading from the ECF system.


                                        /s Jacqueline Coleman Snead
                                        JACQUELINE COLEMAN SNEAD