**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                                  :
INTERACTIVE MEDIA ENTERTAINMENT :   CIVIL ACTION NO. 07-2625 (MLC)
& GAMING ASSOCIATION, INC.,       :
                                  :      MEMORANDUM OPINION
      Plaintiff,                  :
                                  :
      v.                          :
                                  :
ALBERTO GONZALES, et al.,         :
                                  :
      Defendants.                 :
_____  :
```

**COOPER, District Judge**

The plaintiff — Interactive Media Entertainment & Gaming Association, Inc. — moves to preliminarily enjoin the enforcement of the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"). (Dkt. entry no. 5.)  The defendants — the United States Attorney General, the Federal Trade Commission, and the Federal Reserve System — cross-move to dismiss the complaint under either Federal Rule of Civil Procedure ("Rule") 12(b)(1) for lack of subject matter jurisdiction, or Rule 12(b)(6) for failure to state a claim. (Dkt. entry no. 9.)  The Court — upon (1) the parties' submissions in support of, and in opposition to, the motion and cross motion, (2) relevant legal authority, and (3) oral argument (<u>see</u> dkt. entry nos. 5, 8-9, 11-14, 17) — will grant the cross motion and deny the motion as moot.

**BACKGROUND**

UIGEA makes it a criminal offense for those "engaged in the business of betting or wagering" to "knowingly accept" any funds

"in connection with the participation of another person in unlawful Internet gambling".  31 U.S.C. § 5363; see 31 U.S.C. § 5366 (listing penalties).  "Unlawful Internet gambling" is the knowing transmission of a bet or wager, by means of the Internet, where the bet or wager is otherwise illegal under the laws of the place where the bet or wager is "initiated, received, or otherwise made."  31 U.S.C. § 5362(10)(A).

UIGEA, in addition to criminal penalties, provides that state and federal authorities may bring civil proceedings to enjoin any transaction prohibited thereunder.  31 U.S.C. § 5365(b).  UIGEA also authorizes the promulgation of regulations requiring certain financial institutions "to identify and block or otherwise prevent or prohibit restricted [gambling] transactions," 31 U.S.C. § 5364(a), compliance with which is subject to exclusive federal regulatory enforcement.  31 U.S.C. § 5364(e).

The plaintiff — identifying itself as a non-profit advocacy group collecting and disseminating information on electronic and Internet-based gaming — seeks a judgment declaring that the UIGEA is unlawful and facially unconstitutional, and to enjoin both its enforcement and the promulgation of regulations pursuant thereto. (Dkt. entry no. 1, Compl.)  The plaintiff asserts six causes of action on behalf of itself and its members: (1) a First Amendment expressive association claim (Count I); (2) a right to privacy claim (Count II); (3) a First Amendment commercial speech claim

2

(Count III); (4) a claim that UIGEA is contrary to the treaty obligations of the United States and violates a World Trade Organization ("WTO") ruling (Counts IV, V); (5) an ex post facto claim (Count VI); and (6) a claim that UIGEA violates the Tenth Amendment (Count VII).  (Id.)[1]

## DISCUSSION

## I.  Legal Standards For Cross Motion

A motion under Rule 12(b)(1) challenges a court's subject matter jurisdiction.  Ballentine v. United States, 486 F.3d 806, 810 (3d Cir. 2007).  The "issue of standing is jurisdictional". St. Thomas-St. John Hotel & Tourism Ass'n v. Virgin Islands, 218 F.3d 232, 240 (3d Cir. 2000).  A plaintiff seeking to invoke federal jurisdiction bears the burden of demonstrating standing, and a federal court must dismiss the underlying claim without reaching the merits if the plaintiff cannot meet the requirements of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); Mariana v. Fisher, 338 F.3d 189, 204-05 (3d Cir. 2003).

A motion under Rule 12(b)(6), in contrast, tests the legal sufficiency of the complaint, and is granted when the plaintiff can demonstrate no set of facts in support of the claim showing entitlement to relief.  See Conley v. Gibson, 355 U.S. 41, 45-46

---

[1]  The complaint contains a "count" labeled "Request for Issuance of [a] Temporary Restraining Order."  (Compl., at ¶¶ 107-12.)  As a temporary restraining order is merely a form of injunctive relief, the Court will not treat the request thereof as a freestanding claim.

(1957); <u>Markowitz v. Ne. Land Co.</u>, 906 F.2d 100, 103 (3d Cir. 1990); <u>Robb v. City of Phila.</u>, 733 F.2d 286, 290 (3d Cir. 1984).

Regardless of whether Rule 12(b)(1) or Rule 12(b)(6) is at issue, a court must accept as true all material facts alleged in the complaint and view them in the light most favorable to the plaintiff. <u>See Mariana</u>, 338 F.3d at 205 (concerning Rule 12(b)(1)); <u>Malia v. Gen. Elec. Co.</u>, 23 F.3d 828, 830 (3d Cir. 1994) (concerning Rule 12(b)(6)). But this same treatment does not extend to conclusory allegations or legal conclusions masquerading as facts. <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).

## II.  The Cross Motion

The defendants contend that the plaintiff (1) cannot show an injury-in-fact for its First Amendment speech claims or privacy claim; (2) lacks standing to bring its WTO and Tenth Amendment claims because it is not a proper party; and (3) has not alleged an <u>ex post facto</u> injury.[2]  The defendants also argue that even if

---

[2]  The defendants construe the privacy claim as one rooted in the First Amendment, and discuss it in tandem with the expression claims.  (Dkt. entry no. 9, Defs. Br., at 7.)  But this claimed right also could be characterized as arising from the Due Process Clause.  <u>See Lawrence v. Texas</u>, 539 U.S. 558, 564 (2003).  In any event, irrespective of the right's origin, because the contours of the privacy claim raise standing issues distinct from those implicated by the speech claims, the privacy claim will be discussed separately.

the plaintiff has standing, the complaint should be dismissed because it fails to state any cognizable legal claims.[3]

The Court agrees that some of the claims here are jurisdictionally deficient, whereas others fail on the merits. There is no single theory supporting dismissal of all claims here, and thus the Court will analyze each claim individually.

**A.   First Amendment Claims (Counts I & III)**

**1.   Standing**

Federal judicial power extends only to actual cases or controversies.  U.S. Const. art. III, § 2; Flast v. Cohen, 392 U.S. 83, 95 (1968).  Plaintiffs must possess "standing" to challenge the action sought to be adjudicated.  Hein v. Freedom From Religion Found., 127 S.Ct. 2553, 2562 (2007); Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 37 (1976).  This principle of standing encompasses both constitutional and prudential components.  Warth v. Seldin, 422 U.S. 490, 498 (1975).  At an "irreducible constitutional minimum," a plaintiff must allege (1) an actual or imminent personal injury (2) fairly traceable to the challenged conduct and (3) likely to be redressed by a favorable judicial decision.  Lujan, 504 U.S. at 560-61.  But prudential standing also concerns "the need for judicial restraint" and

---

[3]   The defendants also argued that the claims are premature, as no regulations pursuant to UIGEA had been proposed.  But proposed UIGEA regulations have since been issued, and thus this argument is moot.  See 72 Fed.Reg. 56,680 (2007) (to be codified at 31 C.F.R. pt. 132) (proposed Oct. 4, 2007).

comprises a "supplemental aspect of the basic standing analysis."
Oxford Assoc. v. Waste Sys. Auth. of E. Montgomery County, 271
F.3d 140, 145 (3d Cir. 2001).

### a.    Article III Standing

As to the plaintiff's standing to pursue its First Amendment
claims, the defendants contend that neither the plaintiff nor its
members can show an actual injury-in-fact.  The plaintiff alleges
three types injuries suffered by its members under UIGEA: (1) a
threat of criminal prosecution or civil liability; (2) a chilling
effect on the exercise of First Amendment rights; and (3)
"imminent financial ruin". (Compl., at ¶¶ 33, 34,  48, 74.)  The
defendants argue that none of these alleged injuries are
sufficient to confer standing.  The Court disagrees.

When a criminal statute is directed at a group of individuals
who must then choose between risking criminal penalties or
compliance, and when compliance is allegedly in derogation of the
Constitution's guarantees, those individuals have satisfied the
injury-in-fact requirement.  See Va. v. Am. Booksellers Ass'n,
484 U.S. 383, 392 (1988) (booksellers had standing to bring
facial pre-enforcement challenge to statute criminalizing sale of
certain books); Craig v. Boren, 429 U.S. 190, 194 (1976) (injury
requirement met where alcohol vendor was "obliged either to heed
the statutory discrimination, thereby incurring a direct economic
injury through the constriction of her buyers' market, or to

disobey the statutory command and suffer [sanctions]").  As long
as a plaintiff "allege[s] an intention to engage in a course of
conduct arguably affected with a constitutional interest, but
proscribed by a statute, and there exists a credible threat of
prosecution thereunder," no actual arrest or prosecution is
necessary to render a pre-enforcement facial challenge
justiciable.  Babbitt v. United Farm Workers Nat'l Union, 442
U.S. 289, 298 (1979).  But where a challenge is premised on
"imaginary or speculative" fears, and absent allegations that a
prosecution is likely or "even ... remotely possible," federal
courts may not reach the merits of the action.  Id. at 298-99.

     The plaintiff alleges that its members run Internet gambling
businesses, which are otherwise lawful in their respective
physical places of business, but nevertheless accept payments in
connection with the gambling activities of others.  (Compl., at
¶¶ 32-35.)  The plaintiff claims that standing exists for a pre-
enforcement challenge, as these businesses must now either (1)
comply with UIGEA and refrain from such conduct, thereby causing
financial ruin and burdening their expressive association and
commercial speech rights, or (2) risk criminal prosecution.  In
support of its claim that prosecutions are imminent and not
merely speculative, the plaintiff cites to a number of pending
criminal prosecutions of similar businesses and individuals for
Internet gambling operations.  (Dkt. entry no. 5, Affidavit of
Edward Leyden in Support of Motion ("Leyden Aff."), at ¶ 31.)

UIGEA is directed at Internet gambling businesses.  If such a business had been in the practice of accepting bets without determining whether the bet would be legal where it originated before UIGEA's enactment, then UIGEA would require the business "to make significant changes in [its] everyday business practices," or risk being "exposed to the imposition of strong sanctions." Pic-A-State Pa., Inc. v. Reno, 76 F.3d 1294, 1300 (3d Cir. 1996) (internal quotes and cite omitted); accord Wine & Spirits Retailers v. Rhode Island, 418 F.3d 36, 45 (1st Cir. 2005) (liquor franchisor had standing to challenge licensing regulation directed at franchisees where regulation allegedly infringed franchisor's First Amendment rights of speech and association and would cause franchisor economic harm).  While none of the pending prosecutions cited by the plaintiff are for UIGEA violations, a plain reading of UIGEA reveals that its prohibitions could easily apply to the actions of the plaintiff's member businesses.[4]

_____

[4]   The other indictments concern prosecutions for various Wire Act, money laundering, and fraud violations.  E.g., United States v. Lawrence, No. 07-597 (S.D.N.Y. June 29, 2007) (information charging conspiracy, operations of illegal gambling and unlicensed money transmitting businesses, money laundering); United States v. Lombardo, No. 07-286 (D. Utah May 9, 2007) (indictment charging RICO conspiracy, bank fraud, Wire Act, money laundering).
   The Wire Act provides, in relevant part:

   Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles

"Threatened injury can constitute injury-in-fact where the threat is so great that it discourages the threatened party from even attempting to exercise his or her rights." Howard v. N.J. Dep't of Civil Serv., 667 F.2d 1099, 1103 (3d Cir. 1981).  Here, in view of the allegations of First Amendment harm, and absent an express governmental assurance that the plaintiff's members will not be prosecuted under the UIGEA, an injury-in-fact exists.  See Pic-A-State, 76 F.3d at 1300 (finding Government's argument that "no harm is imminent because no prosecution is pending" without merit); Presbytery of the Orthodox Presbyt. Church v. Florio, 40 F.3d 1454, 1458 (3d Cir. 1994) (claim ripe where challenged statute allegedly threatened plaintiff's First Amendment rights and state refused to promise not to prosecute); cf. Salvation Army v. Dep't of Cmty. Affairs, 919 F.2d 183, 192-93 (3d Cir. 1990) (no justiciable dispute because state exempted plaintiff from challenged regulation).[5]

---

the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined under this title or imprisoned not more than two years, or both.

18 U.S.C. § 1084.

[5]  The issue of ripeness is a concern in addressing the threat of prosecution for Article III purposes.  See, e.g., Peachlum v. City of York, 333 F.3d 429, 435 (3d Cir. 2003) (facial First Amendment challenges subject to "relaxed ripeness standard" because of concern that "even in the absence of a fully concrete dispute, unconstitutional statutes ... tend to chill protected expression among those who forbear speaking because of the law's very existence"); Pic-A-State, 76 F.3d at 1298-99 (pre-enforcement challenge ripe in absence of threat of enforcement).

Contrary to the defendants' assertion, Laird v. Tatum, 408 U.S. 1 (1972), does not compel a different conclusion.  The Tatum court rejected a facial challenge to the military's alleged civilian surveillance program, holding that the claim of a "subjective chill" on the exercise of one's rights, without more, does not constitute an injury-in-fact.  Id. at 10-11.  The Tatum plaintiffs' sole claim of injury was that they were deterred from engaging in lawful political activity due to a fear that doing so would bring them under military scrutiny, whereas the plaintiff here has alleged more than a mere "subjective chill."  The plaintiff here is challenging an "exercise of governmental power [that is] regulatory, proscriptive, or compulsory in nature," to which its members are "presently or prospectively subject."  Id. at 11.  This is distinguishable from the claimed injury in Tatum, which arose "merely from the individual's knowledge that a governmental agency was engaged in certain activities," and for which no specific actions against the plaintiffs or future detrimental consequences were alleged.  Id.  Here, the alleged injuries — risk of criminal penalties and financial harm — are concrete and palpable, and not merely conjectural or hypothetical.  Thus Tatum poses no barrier to establishing standing.  See Am. Booksellers Ass'n, 484 U.S. at 392 (threat of criminal penalties sufficient for standing); Craig, 429 U.S. at 194 (potential economic harm satisfies injury requirement).

10

The Court will not follow the defendants' suggestion that
the First Amendment claims be dismissed on standing grounds due
to the plaintiff's alleged failure to demonstrate a legally
protected First Amendment interest.  The Court will not dismiss
the claims for lack of standing under the theory that the
underlying claim of right is not "legally protected," as the
claim is not "so preposterous as to be legally frivolous."
Initiative & Referendum Inst. v. Walker, 450 F.3d 1082, 1093 (10th
Cir. 2006).  Whether the UIGEA burdens a protected legal right
requires a merits determination of the First Amendment claims, an
inquiry that should not be conflated with standing.  See Meese v.
Keene, 481 U.S. 465, 473 (1987) ("whether the statute in fact
constitutes an abridgment of the plaintiff's freedom of speech
is, of course, irrelevant to the standing analysis"); Info.
Handling Serv., Inc. v. Defense Automated Printing Serv., 338
F.3d 1024, 1030 (D.C. Cir. 2003) ("at the motion to dismiss
stage, a plaintiff's non-frivolous contention regarding the
meaning of a statute must be taken as correct for purposes of
standing"; doing otherwise would "effectively be deciding the
merits under the guise of determining [] standing"); Pitt News v.
Fisher, 215 F.3d 354, 361 n.4 (3d Cir. 2000) (stating party may
show standing to litigate claim even if party fails to make out
constitutional violation on merits).

The plaintiff thus has shown that its members satisfy the
Article III requirements for standing:  the existence of an

11

injury-in-fact, which is traceable to UIGEA and redressable by
favorable judicial action.  See Pic-A-State, 76 F.3d at 1300
(interstate lottery ticket seller had standing to challenge
statute prohibiting interstate transmission of information to be
used for purchasing lottery tickets even where no prosecution was
pending).

### b.   Prudential Standing

Even if the "irreducible" requirements are met, prudential
considerations may nevertheless defeat jurisdiction.  Pitt News,
215 F.3d at 359.  Prudential standing is satisfied where (1) the
plaintiff's own legal interests are asserted, (2) the issues to
be adjudicated are not "abstract questions of wide public
significance amounting to generalized grievances," and (3) the
plaintiff's interests "are arguably within the zone of interests
intended to be protected by the statute, rule, or constitutional
provision on which the claim is based."  Mariana, 338 F.3d at 205.
Also, in the context of a pre-enforcement review of a statute in
a declaratory judgment action, considerations of "(1) the
adversity of the parties' interests, (2) the conclusiveness of
the judgment, and (3) the utility of the judgment" should inform
the ripeness determination of whether judicial review is
appropriate.  Pic-A-State, 76 F.3d at 1298.

Although a litigant generally must proceed on allegations of
personally suffering "an invasion of a legally protected

interest", or that such suffering is imminent, <u>Lujan</u>, 504 U.S. at 560, associational standing is an exception to this general rule. <u>See, e.g.</u>, <u>Pa. Psychiatric Soc'y v. Greenspring Health Serv.</u>, 280 F.3d 278, 283 (3d Cir. 2002).  While an association may have standing to bring claims based on its own direct injuries, it may also have standing to pursue its members' claims in a representative capacity.  <u>Id.</u>  Entitlement to associational standing is premised on a showing that (1) the association's members would otherwise have first-party standing to sue; (2) the interests the association seeks to vindicate are relevant to its purpose; and (3) the nature of the relief sought does not necessitate the individuals' participation in the lawsuit.  <u>Hunt v. Wash. State Apple Adver. Comm'n</u>, 432 U.S. 333, 343 (1977).

Since the plaintiff's members would have individual standing to pursue this action, <u>see</u> discussion <u>supra</u>, Sec. II.A.1.a, the first prong of the associational standing inquiry is met.[6]  The action seeks to prevent a criminal statute prohibiting certain gambling transactions from allegedly infringing the First Amendment rights of Internet gambling businesses, and thus is

---

[6]   The defendants do not dispute that the other requirements for associational standing – the litigation seeks to vindicate interests germane to the association's purpose and does not require the individual members' participation – are satisfied. The propriety of associational standing, however, is a particularized prudential consideration that informs the issue of a court's jurisdiction.  <u>Pa. Psychiatric Soc'y</u>, 280 F.3d at 287 n.9.  Thus, the Court must engage in an independent inquiry.

relevant to the plaintiff's organizational goal to "represent the interests of persons and companies which provide Internet interactive [gaming and gambling services.]"  (Leyden Aff., at ¶ 4.)  See Pennell v. City of San Jose, 485 U.S. 1, 7 n.3 (1988) ("germaneness" requirement met where landlord association "organized for the purpose of representing the interests of the owners ... of real property" brought declaratory action challenging city's rent control ordinance).  In addition, facial challenges to statutes requesting only declaratory and injunctive relief do not require individual participation.  Id.; Hosp. Council of W. Pa. v. City of Pitt., 949 F.2d 83, 89 (3d Cir. 1991).  Accordingly, the plaintiff has properly invoked associational standing with regard to the First Amendment claims.

The defendants have failed to identify any concerns persuasively weighing against the exercise of jurisdiction.  The allegations of First Amendment violations amount to a dispute that is concrete and individualized, and not a generalized abstract grievance.  Cf. Schlesinger v. Reservists Comm. to Stop War, 418 U.S. 208, 220 (1974) (generalized citizens' interest that Constitution is observed is insufficient).  The threat of criminal prosecution posed by UIGEA ensures a sufficient adversity of interests to render the action justiciable, especially given the "relaxed ripeness standard" that applies to facial challenges in the First Amendment context.  Peachlum, 333 F.3d at 435; see Pic-

14

A-State, 76 F.3d at 1299 (there is "sufficient adversity between parties to create a justiciable controversy when suit is brought by the only plaintiff subject to regulation by an enactment"); accord Illinois v. Gen. Elec. Co., 683 F.2d 206, 210 (7th Cir. 1982) (dispute ripe where "the Act has only one conceivable target ... [and thus] it is extremely unlikely that the state would overlook the violation").  Furthermore, if the plaintiff were to prevail on the merits, a favorable judgment would be both conclusive and helpful in resolving this dispute.  Therefore, jurisdiction is proper.  The Court will proceed to the merits.

### 2.  Merits

The plaintiff argues UIGEA infringes the First Amendment by burdening (1) expressive association freedoms (Count I) and (2) commercial speech (Count III).  The plaintiff also attacks the statute on grounds of overbreadth and vagueness.

### a.  Expressive Association Rights

The First Amendment gives rise to two forms of freedom of association rights: intimate association and expressive association.  Pi Lambda Phi Fraternity v. Univ. of Pitt., 229 F.3d 435, 441 (3d Cir. 2000).  Intimate association "involves an individual's right to enter into and maintain intimate private relationships free of state intrusion," id., whereas expressive association "focuses on the rights of the organization qua association" to be unburdened in its ability to advocate its viewpoints.  Salvation Army, 919 F.2d at 198.

15

The plaintiff argues that UIGEA, in criminalizing participation in certain gambling-related financial transactions, burdens its members' rights to advocate for and promote legal Internet gambling.  Because the plaintiff's members are "branded as criminals ... for engaging in [an] association espousing safe, legal and responsible wagering," it contends UIGEA impermissibly "chills [members'] expressive association."  (Compl., at ¶ 48(a).) The Court concludes that this claim fails regardless of whether the right to intimate or expressive association is pressed.

As only "certain kinds of highly personal relationships" implicate intimate associational freedoms, the right does not apply to a corporation engaged in the public advocacy and promotion of electronic gaming.  Roberts v. U.S. Jaycees, 468 U.S. 609, 618, 620 (1984) ("association ... such as a large business enterprise [] seems remote from the concerns giving rise to [intimate association protections]").  Absent allegations that its membership is small and selective, or that its activities are conducted in seclusion, the plaintiff is not the type of group warranting constitutional protection as an intimate association. See id. at 620; Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte, 481 U.S. 537, 546-47 (1987) (relationship between club members not sufficiently intimate where clubs often publicized activities in local newspapers and invited non-members to meetings, even though membership not open to public); Pi Lambda

Phi, 229 F.3d at 442 (fraternity not intimate association, as it
had 20-80 members, actively recruited members from general
student body, participated in public university events, and
opened social events to public).

The plaintiff's expressive association claim also is flawed.
The Court must determine: (1) whether the group making the claim
is engaged in expressive activity; (2) if the governmental action
at issue has "significantly affected the group's ability to
advocate its viewpoints"; and then (3) whether the government's
interest in undertaking its action justifies the burden imposed
on the group.  Pi Lambda Phi, 229 F.3d at 442.  The plaintiff's
allegations here that it engages in educational, promotional, and
advocacy activities relating to electronic gaming and legal
Internet gambling are sufficient to qualify as constitutionally
protected expressive activity.  See Roberts, 468 U.S. at 626-27
(taking public views on socioeconomic issues and engaging in
fund-raising and lobbying activities sufficient for First
Amendment protection); Boy Scouts of Am. v. Dale, 530 U.S. 640,
650 (2000) ("seems indisputable that an association that seeks to
transmit [] a system of values [through teaching young men how to
fish and to camp] engages in expressive activity").

But UIGEA does not have any adverse impact, much less a
significant one, on the ability of the plaintiff and its members
to express their views on Internet gambling.  Given that the

17

plain language of 31 U.S.C. § 5363 proscribes only a business's knowing acceptance of certain types of wagering funds, the plaintiff's insistence that UIGEA "has deprived [its] members and their affiliates of their ability to exercise their free speech and associational rights by criminalizing their promotion of Interactive Internet activities" (dkt. entry no. 12, Pl. Resp., at 18) is patently incorrect.  Notwithstanding UIGEA, the plaintiff and its members remain free to promote Internet gambling; nothing in the challenged statute implicates the plaintiff's expressive activities in this regard.

        The plaintiff's implicit argument that the conduct barred by UIGEA is subject to First Amendment protections also is without merit.  The First Amendment's protections generally apply to speech, not to mere conduct.  U.S. Const. amend. I ("Congress shall make no law ... abridging the freedom of speech").  Certain forms of "symbolic conduct" may be protected, but the Supreme Court has expressly rejected the idea "that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea."  United States v. O'Brien, 391 U.S. 367, 376 (1968).  Indeed, it "is possible to find some kernel of expression in almost every activity a person undertakes-for example, walking down the street or meeting one's friends at a shopping mall-but such a kernel is not sufficient to bring the activity within the

18

protection of the First Amendment." <u>City of Dallas v. Stanglin</u>, 490 U.S. 19, 25 (1989).

The plaintiff has not identified, and the Court does not discern, any "communicative element" inherent in the only conduct criminalized by UIGEA – the taking of another's money. <u>Cf.</u> <u>O'Brien</u>, 391 U.S. at 376 (burning of draft card may be assumed as expression of protest against war and draft).[7]  Also, as UIGEA only has potential application if a bet or wager is otherwise unlawful where initiated or received, the plaintiff cannot claim any First Amendment protections for conduct — in accepting the funds for that bet or wager — that essentially facilitates another's criminal act.  <u>See, e.g.</u>, <u>Truchinski v. United States</u>, 393 F.2d 627, 634 (8th Cir. 1968) (prohibiting use of interstate facilities to further the commission of state criminal offenses does not implicate First Amendment); <u>United States v. Borgese</u>, 235 F.Supp. 286, 296 (S.D.N.Y. 1964) ("First Amendment is not applicable where criminal conduct is involved").

---

[7]  Even if the prohibited conduct here were deemed to have both speech and non-speech elements such that an intermediate level of scrutiny is appropriate, Congress's desires to aid the individual states in the enforcement of their local gambling laws, and to curtail the growth of personal debts incurred from Internet gambling and the debt collection problems arising therefrom, <u>see</u> 31 U.S.C. § 5361(a)(3), (4) (congressional findings), are "sufficiently important governmental interest[s]" to "justify [the statute's] incidental limitations on First Amendment freedoms." <u>O'Brien</u>, 391 U.S. at 376.

19

As UIGEA does not reach any constitutionally protected forms of expression, the plaintiff has failed to allege a cognizable First Amendment violation.[8]

### b.   Commercial Speech

The plaintiff's commercial speech claim also is without merit.  Commercial speech is "expression related solely to the economic interests of the speaker and its audience."  Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y., 447 U.S. 557, 561 (1980).  The First Amendment's protection of commercial speech extends only to non-misleading economic expressions that do not relate to illegal activity.  Id. at 566;  Riel v. City of Bradford, 485 F.3d 736, 752 (3d Cir. 2007).  Notwithstanding the plaintiff's claim that UIGEA "criminalizes as false the

---

[8]   Insofar as the plaintiff seeks to invalidate provisions of the Wire Act (see Compl., at ¶¶ 51 ("said effects of the [UIGEA], and by implication from known prosecutions under the Wire Act ... violate the constitutional rights of [plaintiff] and its members") & 54(c) (requesting Court enjoin enforcement of "provisions of any other Act, statute, law, rule, and/or regulation of the United States but not limited to the Wire Act, 18 U.S.C. § 1084, or any provision thereof")), and assuming that the issue is fairly raised, the Court declines to do so.  The plaintiff's allegations as to the Wire Act fall short of stating a colorable First Amendment claim.  Indeed, since its enactment, the Wire Act has consistently withstood constitutional scrutiny.  See, e.g., Truchinski, 393 F.2d at 634 (Wire Act not abridgment of freedom of speech); Martin v. United States, 389 F.2d 895, 897 (5th Cir. 1968) (Wire Act constitutional as applied to criminalize receipt of wager because gambling was illegal in Texas where wager was placed, even though its receipt in Nevada did not violate Nevada law); Borgese, 235 F.Supp. at 296-97 (Wire Act not void for vagueness; enactment was proper exercise of Commerce Clause authority).

representation by [its] members that they operate legally in the country wherein they are incorporated and where their servers are located" (Compl., at ¶ 71), UIGEA does not actually implicate First Amendment interests.  It is possible that the truth of its members' advertising claims – that their operations are "legal" – may now fluctuate depending on the types of transactions they choose to engage in, but that potential consequence does not render UIGEA a restriction on commercial speech.

The plaintiff's attempt to analogize the prohibited conduct to speech by characterizing UIGEA as criminalizing the "content-neutral transmittal of funds" is unavailing.  The acceptance of a financial transfer is not speech.  Even if it were, UIGEA only applies where the financial transaction is one "in connection with the participation of another person in unlawful Internet gambling," 18 U.S.C. § 5363, and there is nothing "content-neutral" about illegal gambling funds or the acceptance thereof. As the UIGEA does not impact expression, it does not come within the purview of the First Amendment.

### c.   Overbreadth and Vagueness

The plaintiff also has failed to raise a colorable claim that UIGEA is overbroad or void for vagueness.  The overbreadth doctrine is relevant only where constitutionally protected conduct is at issue.  Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 (1982) (statute overbroad if

"reaches a substantial amount of <u>constitutionally protected conduct</u>") (emphasis added).  UIGEA does not implicate any form of protected expression, and thus there is no overbreadth problem.

While UIGEA may increase the operating costs of Internet gambling businesses by requiring them to ensure that they are not facilitating wagers that are illegal where made, it nevertheless gives ample notice of the precise contours of the category of conduct deemed criminal.  As UIGEA's prohibitions are not "in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application," UIGEA is not void on vagueness grounds.  <u>Am. Civil Liberties Union v. Ashcroft</u>, 322 F.3d 240, 268 (3d Cir. 2003).

**B.   Privacy Claim (Count II)**

The plaintiff alleges that UIGEA violates the right to privacy because it hinders "consensual" conduct engaged in the privacy of individuals' homes.  (Compl., at ¶ 62.)  But the plaintiff does not have standing to assert the privacy rights of individual gamblers, as it does not claim that "members of the public who wish to avail themselves of [its] members' services" are among its members.  (<u>Id.</u>)  Thus, ordinary rules of third-party standing — as opposed to associational standing principles — govern.

To establish third-party standing, (1) the plaintiff must suffer injury, (2) the plaintiff and third-party must have a

close relationship, and (3) the third party must be blocked from
bringing a claim.  Nasir v. Morgan, 350 F.3d 366, 376 (3d Cir.
2003).  The plaintiff here has failed to explain how it, as an
association promoting electronic gambling, shares a "close
relationship" with individual electronic gamblers.  See id.
(relationship between mail sender and mail recipient
insufficiently "close" to justify standing).  The plaintiff also
does not articulate what obstacles exist to prevent those
individuals from bringing their own actions.[9]

Even if the plaintiff's allegations could be construed to
include its members' privacy claims, they would be without merit.
The plaintiff's reliance on Sable Communications of California v.
Federal Communications Commission, 492 U.S. 115 (1989) and
Lawrence v. Texas, 539 U.S. 558 (2003) is misplaced.  Sable
struck down a content-based restriction on constitutionally-
protected speech.  492 U.S. at 116.  Lawrence reversed as
unconstitutional convictions secured under a state statute which
criminalized the private, consensual sexual acts by same-sex
couples.  539 U.S. at 578.  Neither case lends support for the
proposition the plaintiff advances here:  that the prohibition of

---

[9]  The plaintiff also vaguely alludes to the rights of the
financial institutions involved to engage in the prohibited
transactions.  (See Compl., at ¶ 36 ("financial institutions ...
have discontinued the acceptance of [certain] funds ... because
of the imminent threat of criminal prosecution").)  But such
claims are, as are those purportedly brought on behalf of
individual gamblers, without merit.

certain <u>non-speech related</u> activities <u>occurring over the Internet</u> somehow intrudes on the right of privacy.

### C.   WTO Claims (Counts IV, V)

The plaintiff alleges that UIGEA is void because it is <u>ultra vires</u> of, and otherwise inconsistent with, the foreign trade obligations of the United States.  But prudential standing considerations bar judicial review here.  Although some treaty obligations may create a private cause of action, <u>see</u> <u>Sanchez-Llamas v. Oregon</u>, 126 S.Ct. 2669, 2680 (2006) (assuming, but not deciding, truth of proposition), that is not the case as to the Uruguay Round Agreements at issue here.[10]  Indeed, the statute pertaining to the Uruguay Round Agreements precludes private actions: only the United States "may challenge ... [an] action or inaction by [a] department, agency, or other instrumentality of the United States ... on the ground that such action or inaction is inconsistent with [the Uruguay Round Agreements.]"  19 U.S.C. § 3512(c)(1)(B).  The economic rights of private individuals are thus not within the "zone of interests intended to be protected by" the Uruguay Round Agreements.  <u>Oxford Assoc.</u>, 271 F.3d at 146.  The plaintiff, as it has no cause of action under the WTO, cannot satisfy prudential standing as to its WTO claims.

---

[10]   The Uruguay Round Agreements, executed on April 15, 1994 and approved by Congress, created the WTO.  19 U.S.C. § 3501(7), (8), (9) (defining "Uruguay Round Agreements," "World Trade Organization," "WTO," and "WTO Agreement"); 19 U.S.C. § 3511 (congressional approval).

Even if the Court were to consider the merits of the WTO claims, UIGEA — which was enacted in 2006 — would trump any obligations arising under the 1994 Uruguay Round Agreements.  See 19 U.S.C. § 3512(a)(1) ("[n]o provision of any of the Uruguay Round Agreements ... that is inconsistent with any law of the United States shall have effect"); see, e.g., Tag v. Rogers, 267 F.2d 664, 667 (D.C. Cir. 1959) ("has long been established that treaties and statutes are on the same level and, accordingly, that the latest action expresses the controlling law").  Also, WTO decisions are "not binding on the United States, much less this court."  Corus Staal BV v. Dep't of Commerce, 395 F.3d 1343, 1348 (Fed. Cir. 2005) (quotes and cite omitted).  The plaintiff's WTO claims would thus fail as a matter of law.

### D.   Ex Post Facto Clause Claim (Count VI)

The plaintiff claims that UIGEA is an impermissible ex post facto statute.  As the plaintiff's members could be subject to prosecution under an allegedly ex post facto statute, the claim is suitable for judicial resolution.

The plaintiff contends that UIGEA criminalizes conduct that a court purportedly had declared to be legal four years before UIGEA was enacted, and "persons similarly situated to [its] members" are being prosecuted "for acts which precede [UIGEA],"

25

and thus UIGEA is unconstitutional.  (Compl., at ¶¶ 96-98.)[11]

Ex post facto statutes violate the Constitution.  U.S. Const., Art. I, § 9, cl. 3.  A criminal statute is ex post facto if it is retrospective in application and disadvantages the offender.  Weaver v. Graham, 450 U.S. 24, 29 (1981); Mickens-Thomas v. Vaughn, 321 F.3d 374, 384 (3d Cir. 2003).  Retrospective laws "change[] the legal consequences of acts completed" before their enactment.  Weaver, 450 U.S. at 31.

UIGEA does not violate the Ex Post Facto Clause.  UIGEA is purely prospective; the plaintiff has not identified a provision thereof that purports to apply retroactively.  That UIGEA criminalizes conduct that may have been lawful in its absence does not render it retrospective; if it were otherwise, all new criminal statutes would necessarily violate the Ex Post Facto

---

[11]   In In re Mastercard International Inc., credit card holders ("Holders") alleged that credit card companies ("Companies") violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by allowing the Holders to use their credit cards to obtain online gambling credits.  313 F.3d 257 (5th Cir. 2002).  The Holders alleged that the conduct of the Companies constituted predicate violations of the Wire Act and various state anti-gambling laws.  Id. at 262-63.  But the Mastercard court reasoned that as the Wire Act only applies to betting on sporting events, and as the Holders did not allege they engaged in sports gambling, the conduct of the Companies did not violate that statute.  Id.  Also, since the financial transactions of the Companies were completed before any actual gambling activity, the court concluded that their conduct did not violate any applicable state gambling laws that prohibited, inter alia, the collection of proceeds of a gambling device.  Id.  The court thus found that the Holders could not allege a predicate act upon which to premise a RICO claim.  Id. at 261.

Clause.[12]  Also, whether individuals are being prosecuted under laws pre-dating the UIGEA, such as the Wire Act, is irrelevant to whether UIGEA itself runs afoul of the Ex Post Facto Clause. Indeed, the plaintiff does not allege that anyone is being prosecuted under UIGEA for conduct preceding its enactment.

    **E.    Tenth Amendment Claim (Count VII)**

    The plaintiff's "states rights" claim — that the enactment of UIGEA abrogates the constitutional rights of the individual states to regulate gambling and financial transfers — will be dismissed for lack of standing.  The Tenth Amendment provides that the "powers not delegated to the United States by the Constitution, nor prohibited by it to the states, are reserved to the states respectively, or to the people."  U.S. Const. amend. X.  Private individuals lack standing to pursue claims based on the Tenth Amendment.  See Brooklyn Legal Svcs. Corp. v. Legal Svcs. Corp., 462 F.3d 219, 234 (2d Cir. 2006) (only state or its instrumentality has standing to assert Tenth Amendment right); Medeiros v. Vincent, 431 F.3d 25, 34 (1st Cir. 2005) (same); see

---

    [12]  In any event, it does not appear that criminal penalties would attach to the conduct of the Companies in Mastercard under UIGEA, since UIGEA exempts purely financial entities from criminal liability.  See 31 U.S.C. § 5363 (prohibiting "person engaged in the business of betting or wagering" from knowingly accepting illegal gambling funds) (emphasis added); 31 U.S.C. § 5362(2) ("term 'business of betting or wagering' does not include the activities of a financial transaction provider").  Financial businesses would only be subject to regulatory enforcement.  See 31 U.S.C. § 5364(e).

also <u>Tenn. Elec. Power Co. v. Tenn. Valley Auth.</u>, 306 U.S. 118, 144 (1939) ("[a]s we have seen there is no objection to the Authority's operations by the states, and, if this were not so, the appellants, absent the states or their officers, have no standing in this suit to raise any question under the [Tenth] amendment").  The complaint alleges only an abrogation of states' rights "to regulate gambling and the financial transfers ... associated therewith" (Compl., at ¶ 105), and thus merely asserts the rights of the individual states, and therefore this claim poses nothing more than a generalized grievance insufficient to satisfy prudential standing.  See <u>Mariana</u>, 338 F.3d at 205-06.

Even if standing existed, the regulation of interstate financial transfers — an economic activity necessarily impacting interstate commerce — would be a proper exercise of Congress's interstate commerce powers.  <u>See</u> <u>United States v. Whited</u>, 311 F.3d 259, 267 (3d Cir. 2002) (upholding statute criminalizing theft from health care benefit programs under Commerce Clause because statute regulates "distinctly economic activity bearing a clear and significant relation to interstate commerce").  A finding that a statute is proper under the Commerce Clause necessarily precludes a Tenth Amendment challenge.  <u>See, e.g.</u>, <u>United States v. Parker</u>, 108 F.3d 28, 30 (3d Cir. 1997).  Here, in light of UIGEA's exemption for purely intrastate and intratribal transactions, 31 U.S.C. § 5362(10)(B), (C), and

Congress's express findings on UIGEA's necessity, 31 U.S.C. §
5361(a), Congress had a rational basis for concluding that the
acceptance of Internet financial transfers for gambling purposes
substantially affects interstate commerce.  See United States v.
Spinello, 265 F.3d 150, 155-57 (3d Cir. 2001) (upholding federal
bank robbery statute on rational basis standard).

### CONCLUSION

The plaintiff's claims express a fundamental disagreement
with Congress's judgment that Internet gambling should be
controlled legislatively, and pose questions as to whether UIGEA,
given its exceptions and conjectural enforcement problems, will
be successful in accomplishing its desired ends.  But it is not
the Court's role to pass on the wisdom of a Congressional act or
speculate as to its effectiveness.  The Court has determined that
the challenged statute was lawfully enacted and does not
impermissibly intrude on the Constitution's guarantees.  Thus,
the Court will grant the cross motion, and dismiss the complaint.
The Court will issue an appropriate order and judgment.


            s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

**Dated:** March 4, 2008

29